NORMAN H. SIMON & another, executors,[1] vs. WEYMOUTH
AGRICULTURAL AND INDUSTRIAL SOCIETY & others[2]
(and a companion case[3]).

Norfolk.  December 8, 1982. — May 11, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Findings by judge. *Negotiable Instrument,* Considera-
tion. *Contract,* Rescission. *Sale,* Rescission. *Corporation,* Close cor-
poration.

In two actions, one by former holders of a close corporation's stock seeking
payment on notes issued to them by the corporation and the other by a
minority stockholder seeking a declaration that the notes were unen-
forceable and an order enjoining the corporation from paying the
notes, the judge's subsidiary findings of fact required a conclusion that
the notes were made without consideration. [149-152]
This court ordered rescission of a contract for the sale of stock of a close
corporation by majority stockholders where the contract was executed
on the strength of the validity of certain notes issued by the corpora-
tion to the majority stockholders and provided that the buyer would
cause the corporation to pay the notes, and where the notes were held
invalid for lack of consideration. [152]

[1] Stanley H. Simon, executors of the estate of Philip Simon.

[2] Charles Michelson and South Shore National Bank as executors of the
estate of Charles L. Michelson; James McIntyre and Barbara Hunt as ex-
ecutors of the estate of Lillian P. McIntyre; Mary Reidy, Rita Reidy,
Richard Reidy, and Richard Reagan.  We note that subsequent to the
commencement of this action, Richard Reidy died.  At the date of this
opinion his representative is not a party in this case, although on remand,
the Superior Court judge may act to make his representative a party
under Mass. R. Civ. P. 25 (a) (1), 365 Mass. 771 (1974).

[3] Charles L. Michelson, Lillian P. McIntyre, and Richard Reidy vs.
Richard E. Reagan and the Weymouth Agricultural and Industrial Socie-
ty.  We note that at the commencement of this action, all three named
plaintiffs were deceased.  However, as the complaint recites that the three
named plaintiffs are bringing this action by their executors and as all the
parties proceeded to trial and judgment on the merits, we view this pro-
cedural flaw as nonfatal.

CIVIL ACTIONS commenced in the Superior Court on May 7, 1975, and April 7, 1978, respectively.

The cases were heard by *Sullivan, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Herbert D. Lewis* for Norman H. Simon & another.

*Richard L. Neumeier (Robert T. Gill* with him) for Charles L. Michelson & others.

*Joel A. Kozol (Matthew S. Kozol* with him) for Weymouth Agricultural and Industrial Society.

*Stanley H. Rudman,* for Richard E. Reagan.

NOLAN, J. The issue in this case concerns the validity of five promissory notes executed by the defendant, Weymouth Agricultural and Industrial Society (Weymouth) and a contract to sell 75% of the stock of Weymouth.

Philip Simon, a holder of 25% of the capital stock of Weymouth, commenced this action against Weymouth, Richard Reagan, the holder of the remaining 75% of Weymouth's stock, Charles L. Michelson, and Lillian P. McIntyre, former holders of 25% each of Weymouth's stock, and Richard, Rita, and Mary Reidy, the heirs of a former holder of 25% of Weymouth's stock.[4] Weymouth is a nonprofit corporation organized under G. L. c. 180, § 4. Simon seeks a declaration that the five promissory notes issued by Weymouth to the sellers in the aggregate amount of $212,135.69 are unenforceable, and an order against Weymouth enjoining it from paying the notes.[5]

---

[4] For the sake of simplicity and clarity, we shall refer to Michelson, McIntyre, and the three Reidys as sellers.

[5] Simon's complaint is not phrased as an action under Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974). Although we may have been inclined to conclude that the claims raised by the plaintiff should have been raised in a shareholder's derivative suit, this issue was not raised in the Superior Court and was not briefed by the parties. We decline to address this issue, and the closely related issue of Simon's standing to challenge the enforceability of the notes. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *First Nat'l Bank* v. *Haufler,* 377 Mass. 209, 210-211 (1979). See generally *Bessette* v. *Bessette,* 385 Mass. 806 (1982) (inappropriateness

The sellers[6] commenced a separate action against Weymouth and Reagan[7] seeking payment of the notes issued by Weymouth. In the alternative, the sellers seek either reformation or rescission of the contract to sell their stock and restitution.[8] The judge conducted a trial without a jury and made findings of fact and conclusions of law.

The judge concluded that there was consideration for the notes. However, because he found that the sellers violated their fiduciary duty to Simon, a minority stockholder, the judge ordered that 25% of the amount otherwise payable by Weymouth to each of the sellers be paid to Simon's estate and ordered the remainder be paid in accordance with the terms of the notes. Finally, the judge declined to rescind the purchase and sale agreement. Simon, Weymouth, Michelson, McIntyre, and Richard Reidy appealed. We transferred the appeal to this court on our own motion. We give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses. *Seder v. Gibbs,* 333 Mass. 445, 446 (1956). His findings of fact will not be set aside unless they are clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). However, "[i]nferences from the basic facts . . . are open for our decision, and the inferences drawn by the trial judge are entitled to no weight in this court." *Malone v. Walsh,* 315 Mass. 484, 490 (1944). Further, as we held in *Colby v. Callahan,* 311 Mass. 727, 729 (1942), where a judge's ultimate findings are inconsistent with his subsidiary findings, we shall set aside the ultimate

of personal action by shareholder to resolve claims inuring to benefit of corporation).

Simon also seeks "a full accounting . . . of the 'Notes Payable' and 'Interest Expense' items on the financial statements of the defendant, WEYMOUTH."

[6] See note 3, *supra.*

[7] The judge found that Reagan began actively managing and operating Weymouth in 1970.

[8] This contract reflected a sale of 75% of Weymouth's stock by the sellers to Reagan.

findings. See *Reardon* v. *Reardon*, 345 Mass. 772, 772 (1963); *Atwood* v. *Atwood*, 297 Mass. 229, 231-232 (1937); *Wyness* v. *Crowley*, 292 Mass. 459, 460-461 (1935). We are not bound by the judge's conclusions of law. *Newburyport Soc'y for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532-533 (1934).

We summarize the facts as follows: Weymouth is a corporation formed in 1945 for the purpose of organizing and producing the annual Weymouth Fair. Prior to July 8, 1970, the 1,600 outstanding shares of stock of Weymouth were held in the following percentages: Simon-25%; Michelson-25%; McIntyre-25%; Richard Reidy-8.3%; Mary Reidy-8.3%; Rita Reidy-8.3%. On July 2, 1970, Weymouth executed five promissory notes dated July 2, 1970, and payable in the following amounts: Mary Reidy-$23,570.63; Richard Reidy-$23,570.63; Rita Reidy-$23,570.63; Harry Michelson-$70,711.90; Lillian P. McIntyre-$70,711.90 These notes were secured by a mortgage on all Weymouth's real property given to the sellers.

On July 8, 1970, those five stockholders sold their stock in Weymouth to Reagan for the aggregate price of $22,500. Simon refused to sell his stock. Reagan became the majority stockholder (75%) and began actively to manage Weymouth. The purchase and sale agreement provided that Reagan would cause Weymouth to pay the five notes in accordance with their terms. The sellers warranted that the notes issued by the corporation were issued for consideration.

The sellers claim that the notes were given in exchange for preexisting debts owed by Weymouth to them arising out of loans and services rendered to Weymouth.

1. *Consideration for the notes.* The notes are negotiable instruments within the meaning of art. 3 of the Uniform Commercial Code. G. L. c. 106, § 3-104. Weymouth is the maker and the sellers are the payees of the notes. Lack of consideration "is a defense as against any person not having the rights of a holder in due course." G. L. c. 106, § 3-408. Although a payee may be a holder in due course

(§ 3-302 [2]), the sellers are not holders in due course because they did not take the instruments for value (§ 3-302 [1] [a]), as will be demonstrated below. They are subject to any defenses of a party with whom they have dealt. § 3-305 (2). They dealt with Weymouth. Thus, the sellers take subject to Weymouth's defense of lack of consideration, if such a defense is established.

The obligor on the instrument bears the burden of proving lack of consideration. § 3-307 (2). Cf. *Smith* v. *Gentilotti,* 371 Mass. 839, 841 (1977). The judge ruled that Simon and Weymouth did not satisfy the burden of proof. G. L. c. 106, § 1-201 (8).[9] We conclude that the judge's ruling was clearly erroneous.

All the subsidiary findings of facts made by the judge compel the conclusion that the notes were not supported by consideration. The liability which the sellers claim existed prior to the issuance of the notes never appeared on the financial statements until after the issuance of the notes. Between 1950 and 1965, Simon, Michelson, Reidy, and McIntyre lent money to Weymouth in equal amounts at the same time, and these loans were repaid by Weymouth to the four stockholders in equal amounts and at the same time and were recorded on the financial books of Weymouth. However, from 1965 to July, 1970, Weymouth's books reflected no indebtedness to any of the stockholders, and an examination of the transcript reveals no evidence of such indebtedness.[10] Sons of the stockholders testified to loans made by the stockholders to the corporation only during the years preceding 1965. The accountant testified that no loans to the corporation were made by the sellers after 1964. There is no evidence that the stockholders made loans after 1964.

---

[9] We need not decide whether Simon has standing to raise the issue of lack of consideration on behalf of Weymouth because Weymouth, a defendant in the second action, clearly has such standing.

[10] The parties did not file a transcript before oral argument, but they submitted one by agreement at the court's request after argument.

We may infer that no loans were made after 1964 from the absence of any record on the books and statements because, when the stockholders made loans prior to 1965, they were recorded and were reflected on the financial statements. Corporate books and records are admissible against shareholders of a corporation as prima facie evidence of the financial transactions and condition of the corporation. See 5 W. Fletcher, Cyclopedia of Private Corporations § 2204, at 664 (rev. perm. ed. 1976), and cases collected. See also 9 W. Fletcher, Cyclopedia of Private Corporations § 4620 (rev. perm. ed. 1976). None of the certified financial statements after 1964 until the statement of December 31, 1970, reflected an indebtedness to the sellers. The evidence from the books and records remained unrebutted and is therefore established. To the point, here is the following language in *Commonwealth* v. *Pauley,* 368 Mass. 286, 290 (1975): "According to the Massachusetts view, when, by statute or common law, one fact probative of another is denominated prima facie evidence of that second fact, proof of the first or basic fact requires a finding that the second, the inferred or presumed fact, is also true. The finding is mandatory." Furthermore, the sellers never objected to the failure to record the alleged indebtedness on Weymouth's books. See *Cheney* v. *Cheney,* 162 Mass. 591, 592 (1895); *Sturtevant* v. *Wallack,* 141 Mass. 119, 123 (1886). None of the tax returns or the annual reports filed with the State racing commission for the years 1965 through 1969 reflects any indebtedness to the sellers. Simon did not become aware of the alleged indebtedness to the stockholders which is now claimed as consideration until he read the December 31, 1970, certified financial statements.

We accept the judge's subsidiary findings. *Seder* v. *Gibbs,* 333 Mass. 445, 446 (1956). However, we are not constrained to defer to the conclusions the judge made on the basis of these findings. *Donahue* v. *Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 580 (1975). We view these findings as compelling the conclusion that the notes were unsupported by consideration. The judge's conclusion that the notes were supported by consideration is in-

consistent with his subsidiary findings. Accordingly, we set it aside. See *Reardon v. Reardon*, 345 Mass. 772, 772 (1963); *Perkins v. Becker's Conservatories, Inc.*, 318 Mass. 407, 411 (1945). The five notes, therefore, are unenforceable. Weymouth is not obligated on the notes.

2. *Purchase and sale agreement.* We further conclude that the purchase and sale agreement between Reagan and the sellers was executed on the strength of the validity of the notes. Paragraph two of the agreement provides that Reagan shall cause Weymouth to pay the five notes to the sellers. As we have held that the notes are unenforceable, the purchase and sale agreement is impossible of fulfilment. We conclude that the parties intended the agreement to be null and void in the event that the notes were declared invalid. See *Boston Plate & Window Glass Co. v. John Bowen Co.*, 335 Mass. 697, 700 (1957).

Moreover, the agreement between Reagan and the sellers in paragraph two contains the following provision: "It will be a condition of the performance of the obligations of the Buyer hereunder that *all of the* directors and *stockholders of the Corporation* respectively vote at meetings of directors and stockholders respectively in favor of the following resolution: The Treasurer of the corporation is hereby authorized and directed to issue the notes in the amounts, on the terms, to the order of the persons named and in the form, all as shown in Schedule A attached hereto and made a part hereof by reference, in exchange for the notes of the corporation, which including interest, are in like amounts" (emphasis supplied). It is perfectly clear that Simon, a stockholder, had not voted for this resolution.

Accordingly, we treat the agreement as rescinded. The Superior Court judge, on remand, should order the notes cancelled and direct the parties to return to each other the consideration that each received pursuant to the agreement. See *Bellefeuille v. Medeiros*, 335 Mass. 262, 266 (1957); *Shea v. Manhattan Life Ins. Co.*, 224 Mass. 112, 116 (1916).

In conclusion, we reverse the judgment of the Superior Court and remand the case for further proceedings in conformity with this opinion.

                                                      *So ordered.*