Lenhoff, J.
These proceedings involve a complaint instituted by the plaintiff Bank seeking to recover an outstanding principal balance, interest and costs due from the defendant as signatory on two (2) promissory notes, in default.
In response to said complaint, the defendant filed an answer setting up therein five (6) affirmative defenses.[1]
The evidence disclosed that the plaintiff Bank was the holder of two (2) notes signed as follows:
(New England Office Products Co., Inc.)
Signed by (/s/ Janet M. Friel, President)
(/s/ Janet M. Friel)
The first note was dated May 13,1982 in the principal sum of $10,000. The following appeared therein: “On Demand, the undersigned (jointly and severally if more than one) promises(s) to pay to the order of First Safety Fund National Bank at said Bank.” The second note was dated March 30,1983 in the principal sum of $30,000. It read, “On Demand, the undersigned (jointly and severally if more than one) promises(s) to pay to the order of the First Safety Fund National Bank.” Said second note was accompanied by a security agreement, handed to the defendant for signature after she signed the second note. She glanced over it and signed as follows:
New England Office Products, Co., Inc.
by /s/ Janet M. Friel, President
On or about March 15, 1984, the corporate signatory (The New England Office Products Co., Inc.) ceased its business operations. Thereafter, the payments on both notes were not seasonably made, causing them to be in default. Upon default, $4,162 was the balance due on the original $10,000 note *46 with $20,294.43 being the balance due on the $30,000 note. As of October 1, 1984, the interest due on both notes, in combination, totalled $964.31.
The evidence reported further reveals that the corporation, whose name appears on each note was founded by the defendant’s late husband in 1972, he having died in August, 1981; that she was never involved in the corporation’s . day to day operations, before or after the demise of her spouse who was the corporation’s president and manager, though she did assume the corporate • presidency as the sole stockholder; and, that the defendant’s brother-in-law was the office manager actually running the business with the defendant • signing all corporate checks. In the course of operating the business, the manager arranged with the plaintiff Bank for loans to fund activities of the corporation. During negotiations, there was no mention of personal liability of the defendant. The defendant did not make out the loan application, did not converse with the plaintiff Bank nor did the plaintiff send her copies of either note before the signatures were affixed. At the time each note was executed, no explanation was made or given to the defendant by the plaintiff as to the meaning of words contained therein or as to the effect of her signing the note twice.
There was also evidence that the defendant did not intend to sign as a co-maker or guarantor; and she didn’t think she was so doing. The only security taken for the second note were corporate assets (inventory and accounts receivable). In addition, it was shown that the plaintiff Bank was aware that the purpose of the loan was for corporate business reasons; that the only address on the notes was that of the corporation; that the loan proceeds were deposited into the corporate account, used only for corporate purposes; and, all note payments were made by the corporation until it ceased to do business.
The evidence above reported is supplemented by the following findings of fact made by the Trial Court: Olafson v. Kilgallon, 362 Mass. 803, 804, 805 (1973). Defendant was not experienced in the field of corporate finance and was not sophisticated in the ways of business or banking. The printed body of the note was not comprehensible to the average consumer and would only be understood by a highly experienced businessman, a lawyer or a broker. There were no words such as “co-maker” or “guarantor” next to the defendant’s signature nor do the terms of the note explain that a second signature without a title could create personal liability; and defendant signed the note as an officer of the corporation with the intent that the note be a debt of the corporation. She did not intend to sign as a co-maker or a guarantor.
The Trial Court rendered judgment for the defendant. In consequence thereof, the plaintiff (appellant) seasonably took appropriate steps to bring its grievances to this Appellate Division for review. Said grievances concern the *47 Trial Court’s disposition of its Requests for Rulings[2], being numbered 1, 6,8,9, 10,11 and 16 (c).
As the Trial Court had filed “Findings of Facts,” it follows that same is a like functional purpose similar to the statutory report of material facts in earlier equity practice, showing therein the Trial Court’s thought process to thereby render submitted requests for ruling superfluous. See Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981). Also, Petition of New Bedford Child and Family Service to Dispense with Consent to Adoption, 385 Mass. 482, 491 (1982). And, we are fully cognizant that requests can be rendered immaterial or inapplicable by findings warranted or sustained by the evidence. Cassiani v. Bellino, 338 Mass. 765, 766 (1959).
Concerning the resolution of the grievance involving plaintiffs Request No. 1, we are mindful that a record revealing evidence to support Trial Court’s findings causes such findings to become conclusive and they cannot be disturbed: Herl v. McCann, 360 Mass. 507 (1971); Mass v. Old Colony Trust Company, 246 Mass. 139, 143-144 (1923); that a finding of fact stands unless “plainly wrong”, Larabee v. Potvin Lumber Co., Inc., 390 Mass. 636, 643 (1983); that due weight must be given to the findings of the Trial Court who heard the testimony and had the opportunity to weigh the credibility of the witnesses thereby not setting aside its findings unless “clearly erroneous;’ Simon v. Weymouth Agr. & Industrial Soc., 389 Mass. 146, 148(1983); and additionally, we note that although there may be evidence to support a finding it still can be considered “clearly erroneous” if the entire evidence leaves an appellate court with a definite and firm conviction that a mistake has been committed. Marlow v. New Bedford, 369 Mass. 501, 508 (1976).
Though the Trial Court’s findings of fact usually render superfluous plaintiff’s Requests listed as grievances, this opinion will accord appropriate attention thereto; and, we thereby anticipate dealing effectively with them.
We confront the pivotal issue for resolution, in the light of the Trial Court’s findings of fact, by recognizing that we must determine whether the ultimate judgment is or is not erroneous. Our task accordingly is “to render decision *48 according to the justice of the case” pursuant to G.L. c. 231, § 110. Dist./Mun. Cts. R. Civ. P., Rule 52(a) imposes an independent duty on the Trial Court to articulate the essential grounds of its decision, to ensure that the parties involved and the Appellate Court may be fully informed as the basis of its decision. Schrottman v. Barnicle, 386 Mass. 627, 638-639 (1982). In the process of making the determination we seek, we view the denial of plaintiffs Request No. 1 (There is sufficient evidence in this case to warrant the Court to make a finding for the plaintiff) though considered error, same may not be of sufficient moment to result in a reversal. The case of Bresnick v. Heath, 292 Mass. 293 (1935) involved in a general finding with no findings of fact made or filed. In that situation, the error was fatal. However, in cases where it is clearly demonstrated “that the Trial Court’s finding for the winning party is independent of the incorrect ruling of law,” reversal is not in order. See Di Gesse v. Columbian Pontiac Co., 369 Mass. 99, 106 (1975).
Consequently, we examine the Trial Court’s findings to discover whether findings and reasonable inferences to be drawn therefrom are of such import as to negate the Trial Court’s erroneous disposition of plaintiffs Request No. 1. By pursuing the process of canvassing the Trial Court’s findings, other pertinent findings coming to our attention will receive deserving comment and we shall cite applicable law relating thereto that our search reveals.
First, we cite the following provisions of the Uniform Commercial Code that apply to this case. G.L. c. 106, § 3-401 provides that “No person is liable on any instrument unless his signature appears thereon.” G.L. c. 106, § 3-402 states: “Unless the instrument clearly indicates that a signature is made in some other capacity, it is an endorsement.” We find the following appearing in the next to the last sentence of the Official Comment in said sections 3-402:
... by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as maker of a note . ..
G.L. c. 106, § 3-403, so far as is material, reads:—
(2) An authorized representative who signs his own name to an instrument
(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed (in a representative capacity;
(b) except as otherwise established (underscoring supplied for emphasis) between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.”
In Carleton Ford, Inc. v. Gennaro Oste, [Mass. App. Ct. 800, 819-820(1973)], the Appeals Court said: “We add that even if the burden had been on the plaintiff to prove the defendant’s personal liability, there was more than *49 sufficient evidence to take the issue to tlje jury.” Hence, here the Trial Court is ■ properly the fact finder charged with that responsibility. In Ex parte S.H. Coussement, Ala., 412 So. 2d 783 (Supreme Court of Alabama), at p. 785, the Court cited the New York Court of Appeals in Rotuba Extruders, Inc., v. Ceppos, 46 N.Y. 2d 223, 229; 385 N.E. 2d 1068, 1071; 413 N.Y.S. 2d 141 (1978) where at p. 144 the Court said:—
But the type of showing needed to bring the note within the ‘except’ clause of section 3-403 [(subd. (2), par. (b.)] must necessarily amount to more than the mere self-serving allegation of the signer’s subjective intent to sign as representative. To escape personal liability, the signer has the burden to ‘establish’ an agreement, understanding, or course of dealing to the contrary .. . thus, without an affirmative demonstration that the taker of the note knew or understood that the signer intended to execute the instrument in a representative status only, there can be no defense that, notwithstanding the form of the note, representative liability was ‘otherwise established between the . . . parties.’
This Appellate Division possesses power, from the basic found facts, to draw reasonable inferences, which inferences are open for our decision. Simon v. Weymouth Agr. & Industrial Soc., supra, at page 148.
In the present situation, the defendant executed each note by the name of the corporation followed by her name and her official corporate position. Thus, this signature was clearly in a representative capacity. The foregoing was followed by the defendant’s individual signature, standing alone. As per G.L. c. 106, § 3-403 (2) (a), it would appear that personal liability would be fixed on the defendant for the signature is in addition to the signature already on the instrument in a clear representative capacity. However, we note that the verbiage in said section 3-403 (2) (b) sets forth “except as otherwise established between the immediate parties. . . Therefore, parole evidence is admissible between the immediate parties to determine the capacity in which a signature was made. See Comment 3 to section 3-403. The Trial Court is put in a position thereby to properly consider all the attendant circumstances so as to determine probable personal liability. The ultimate finding rendered for the Defendant indicates that the Trial Court concluded that it was so otherwise established that individual liability was found wanting.
An analysis of the facts, which includes all the evidence material to the questions reported, discloses that the negotiations leading to the execution of the notes involved and concerned only the corporation with there having been no mention of personal liability of the defendant. No evidence appears to have been produced to the contrary. It was clearly evident that the purpose of the loan was solely for business purposes, and the only security sought and obtained were corporate assets. The defendant did sign her name on each note a second time as requested by an officer of the plaintiff. The Trial Court found as a fact that the second signing of each instrument was performed by the defendant with no intention to be personally bound and liable thereon. In the *50 case of Century Plastic Corp. v. Tupper Corp., 333 Mass. 531 (1956), the Court at page 535 said: “A mistake by one party to the knowledge of the other is equivalent to a mutual mistake.” See Eno v. Prime Manuf. Co., 317 Mass. 646, 650 (1945). By the defendant’s signing as she did, though appearing to be bound personally thereby, the Trial Court’s finding that such signature was not so intended, amounts to a “mistake” on the part of the defendant. As the pre-loan negotiations reveal that no mention was made of any personal liability, the Trial Court’s apparent inference drawn therefrom, which is adopted by this Body, when taken in combination with the fact that there was no evidence to the contrary, demonstrates that the plaintiff knew or should have known that its loans were made solely on the credit and to the corporation; not including the defendant personally. Such finding, from such evidence, explains that the second signature was a “mistake” for it wasn’t necessary to carry out the understanding of the parties occurring in said pre-loan negotiations. The outcome of determining the existence of a “mistake” which we can and do regard as “mutual,” enables the correction thereof in these proceedings. See Mates v. Penn. Mutual Life Ins. Co., 316 Mass. 303, 306 (1944).
Though the Trial Court did not state the above in the language employed, we construe that its ultimate finding for the defendant together with its other findings clearly shows the thrust of the Trial Court’s thinking resulting in its decision.
Supplementing the above analysis, we acknowledge that one is ordinarily bound to a contract signed whether or not its terms are understood in the absence of fraud or undue influence. We adopt the following quote from 17 Am. Jur. 2d, S.149, at p.497;—
In the absence of fraud, misrepresentation or other wrongful conduct by another contracting party, one who accepts a written contract is conclusively presumed to know and assent to its contents.
Fraud, however, can come to pass where one deliberately induces another to sign an instrument and secures such signature in circumstances that changes the import of prior understanding as negotiated in advance of the formal execution of the involved instruments. See Shaw v. Victoria Coach Line, Inc., 314 Mass. 262, 267 (1943). The failure to communicate a change in the dealings preliminary to contract finalization is patently unfair and can be considered deceptive or “wrongful conduct”. The party so failing to communicate should not benefit thereby to the detriment of the other. Whether a signatory has been misled is a factual question. In the case at bar, the Trial Court, based on the evidence adduced from the witnesses appearing and testifying before it, could properly so find as a fact; and, in consequence thereof, take appropriate action to thwart an unjust result it concludes would otherwise occur. Its decision accordingly, implies the foregoing.
By reason of all hereinbefore set forth, it is clear that the Trial Court’s ultimate finding for the defendant was independent of its incorrect ruling of law as to plaintiffs Request No. 1, supra. Further, the Trial Court’s said ultimate finding for the defendant is based on sufficient evidence and same is *51 not “plainly wrong” nor “clearly erroneous”. Therefore, all remaining results of the plaintiff are thereby rendered immaterial or inapplicable.
There being no prejudicial error found, the Report be and is hereby dismissed.

. Failure to join a necessary party.

The Court’s disposition is alongside the request and is underscored.
1. There is sufficient evidence in this case to warrant the Court to make a finding for plaintiff. DENIED
6. In order for a corporate officer to avoid personal liability for his signature on a promissory note, he must disclose his intent to sign only as a corporate representative to the other contracting parly. Uncommunicated intent is insufficient. DENIED.
8. As a matter of law,there can-be no liability for fraud by reason of bare nondisclosure DENIED
9. Toobtain relief bas ed on mutual mistake, the mistake of one party is not adequate ground for relief; the mistake must relate to the same subject matter and be shared in by both parties. DENIED
10. In the absence of fraud, one is bound by a contract he signs. DENIED
11. Insofar as unilateral mistakes are concerned, a party to a contract cannot avoid that contract on the ground that he made a mistake where there has been no representation there is no ambiquity in the terms of the contract, and the other contracting party had no notice of such mistake and acts in good faith. ALLOWED BUT SEE FINDINGS
16. Upon all the evidence, the Court should rule in favor of the Plaintiff on the following specific grounds:
(c) On or about May 13,1982, defendant as a individual executed and delivered to theBank a Demand Note in the original principal amount of $10,000 at a stated interest rate of one and one-half over the prime rate at the Bank per annum. DENIED

. Failure to state a claim upon which relief may be granted.

. The defendant’s signature was procured by false and fraudulent representations of plaintiff Bank, knowing them to be untrue and intending defendant to act therein.

. That defendant executed promissory notes under a mistake of fact or law or both in that the defendant did not know second signature made her co-maker creating personal liability and if defendant knew or had been told, defendant would not have executed the notes.

. The notes are void for want of consideration.