SAMUEL SEDER, trustee in bankruptcy, *vs.* G. WAYNE GIBBS & another.[1]

Worcester. September 27, 1955. — January 11, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Corporation*, Officers and agents. *Fiduciary. Mortgage*, Of personal property: validity, foreclosure. *Election.*

Two defendants, one a director, officer and creditor of a corporation leasing and operating a hotel serving liquor, and the other a director of the corporation who was not owed any money by it, violated their fiduciary obligations to the corporation as directors and also as mortgagees of its personal property where it appeared that they caused the corporation to give them a mortgage on its personal property at a time when it was insolvent, as the creditor defendant knew, and for an amount much larger than the sum it then owed him, that a few months thereafter they entered into a contract with a third person to sell him the mortgaged property contingent upon their foreclosing the mortgage, that they then foreclosed the mortgage and bought the property for about the amount of the mortgage and thereafter carried out the sale of the property to the third person for a price far in excess of that amount, and that in connection with such sale the creditor defendant cancelled the corporation's lease of the hotel and surrendered its liquor

[1] Raymond E. Shea.

license and was instrumental in obtaining a new lease and a new license
for the third person. [451–453]
In the circumstances disclosed in a suit in equity by a trustee in bank-
ruptcy of a corporation against a director and officer and another
director of the corporation who were guilty of breaches of their fiduciary
duties to the corporation as directors and as mortgagees of its personal
property, the plaintiff was entitled to elect whether to affirm an im-
proper sale of the mortgaged property made by the defendants to a
third person after they had foreclosed their mortgage and bought the
property, to ratify other transactions connected with the sale and to
recover anything of value received by the defendants through the sale,
or to repudiate the sale and all transactions connected therewith and
recover damages from the defendants for any loss sustained by the cor-
poration by reason of their illegal acts. [454]

BILL IN EQUITY, filed in the Superior Court on April 6,
1950.

The suit was heard by *Swift*, J.

*Joseph Kruger*, (*Alan J. Dimond, Sydney Berkman &
Samuel Seder* with him,) for the plaintiff.

*Francis T. Mullin*, (*Henry C. Donnelly* with him,) for the
defendants.

COUNIHAN, J.    This is a suit in equity by which the
plaintiff as trustee in bankruptcy of the Athol Hotel Cor-
poration, hereinafter called the corporation, seeks to estab-
lish and recover claims against the defendants, one of whom
held certain offices in and both of whom were directors of
the bankrupt corporation, for an alleged breach of their
fiduciary duties as such officer and directors and as mort-
gagees, as will hereinafter appear.    The judge dismissed the
bill and the plaintiff appealed.    In our opinion there was
error.

The judge made a report of material facts and the evi-
dence is reported.    G. L. (Ter. Ed.) c. 214, §§ 23, 24, as
amended.    In these circumstances it is the duty of this court
to examine the evidence and to decide the case on its own
judgment, giving due weight to the findings of the judge,
which will not be reversed on oral testimony unless plainly
wrong.    *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass.
79, 83–84.    *MacLennan* v. *MacLennan*, 316 Mass. 593, 594–
595.    In this case no question of belief or disbelief of oral

testimony is present, for there is no variation in any essential respect in the testimony of the witnesses, two of whom were the defendants, and all of whom were called by the plaintiff. "Inferences from the basic facts shown by such testimony, however, are open for our decision, and the inferences drawn by the trial judge are entitled to no weight in this court." *Malone* v. *Walsh,* 315 Mass. 484, 490, and cases cited. *MacLennan* v. *MacLennan, supra.* It is true that there was a dispute about the amount of money owed the defendant Gibbs (hereinafter called Gibbs) by the corporation at certain times but this is not material except perhaps as to what the plaintiff is entitled to recover.

With these principles in mind, we find the following facts: On November 17, 1944, the corporation was formed with an authorized capital of $10,000, consisting of one hundred shares of common stock with a par value of $100 each, and the amount of capital stock then issued was three shares to be paid for in cash. Later additional capital stock was authorized to be issued so that shortly before March 15, 1949, Gibbs had acquired more than a majority of the common stock of the corporation. On October 11, 1946, the corporation acquired a lease from the Garbose Realty Co. of premises known as the Pequoig Hotel in Athol, together with all furniture, furnishings, and equipment therein. This lease by its terms was to expire on December 31, 1966. In January, 1949, Gibbs, the defendant Shea, Loretta M. Gibbs, wife of Gibbs, and Howard H. Gibbs, his brother, were elected directors of the corporation and Gibbs was elected president and treasurer. Besides the furniture, furnishings, and equipment mentioned in the lease the corporation had acquired additional furniture, fixtures, and equipment, the extent of which does not appear. The corporation also on March 15, 1949, had a license to sell liquor on the premises which was required to be renewed annually. G. L. (Ter. Ed.) c. 138, § 16A, as appearing in St. 1937, c. 424, § 1. On that day the board of directors of the corporation, which was made up of those persons elected on January 26, 1949, voted that "the treasurer of the corporation be authorized to sign in the

name of the corporation a note and a chattel mortgage on all of the chattels and stock in trade of the corporation, said chattel mortgage to run to G. Wayne Gibbs and Raymond E. Shea, to secure said Gibbs and Shea for advances made and to be made by them to said corporation. Said chattel mortgage and note is to be in the amount of fifteen thousand ($15,000) dollars and is to be payable on demand." On March 16, 1949, the corporation, by its treasurer, Gibbs, executed and delivered to the defendants a note for $15,000, together with a chattel mortgage to secure the same. The mortgage covered all of the personal property of the corporation including stock and liquors on hand. It did not cover the lease nor the liquor license. At that time the corporation owed Gibbs $4,240 for money previously lent it by him. Shea never made any investment in the corporation and never lent any money to it. The plaintiff admitted in his brief that at the time the mortgage was given the corporation owed Gibbs $4,240, and that from the date of the mortgage to the date it was foreclosed, as will subsequently appear, Gibbs advanced $2,691.49 to pay debts of the corporation. Gibbs contended that at the date of the foreclosure there was due him also from the corporation the sum of $9,450 for salary and travelling expenses under an oral agreement with the corporation. There is no vote of the directors authorizing such an arrangement and he was not on the payroll and the corporation did not pay any social security or employment security contributions on such salary. Gibbs in his testimony admitted that at the time the mortgage and note were given and even as far back as October 11, 1946, when the lease was entered into, the corporation was insolvent.

Sometime in June or July, 1949, the defendants decided that they would sell the hotel business if they could find a buyer. One LaPierre became interested and on July 12, 1949, they entered into a written agreement with him whereby they agreed to sell him all the personal property described in the mortgage which they held for the sum of $39,500. This agreement was subject to several conditions

of which important ones are as follows: LaPierre was to pay $3,500 at the signing of the agreement; when the sale was completed he was to give the defendants a note for $1,750 payable on November 15, 1949, and a note for $37,050[1] payable at the rate of $80 per week for five hundred twenty weeks, the payments of $80 a week to include any interest; LaPierre was to assign to the defendants a new lease covering the hotel premises which he was to obtain from the Garbose Realty Co. as collateral security for the payment of the note for $37,050; there was an express condition that LaPierre or a corporation to be formed by him should be able to obtain a new lease from the Garbose Realty Co. upon the same terms as in the lease which the Athol Hotel Corporation had; if and when this happened the defendants would cause to be recorded a duly executed cancellation of the former lease to the Athol Hotel Corporation; and there was also an express condition that LaPierre or a corporation to be formed by him should be able to obtain a liquor license from the town of Athol to sell liquor on the premises. A very significant condition reads, "This Agreement is also upon the express condition that the Parties of the First Part [the defendants] are able to foreclose the chattel mortgage running from the Athol Hotel Corporation to the Parties of the First Part and dated March 16, 1949 . . . ." There was also the usual condition that if the parties of the first part should be unable to give good title or make conveyance as stipulated any payments made under the agreement should be refunded and all other obligations of either party thereunder should cease.

Thereafter on July 13, 1949, pursuant to their agreement to foreclose the mortgage as provided in the agreement of sale, the defendants sent the corporation a written notice of intention to foreclose for default in the conditions of the mortgage. On July 21, 1949, the mortgage was foreclosed by public auction on the premises. No one was present at

---

[1] These figures add up to $42,300 which is $2,800 in excess of the price of $39,500 fixed in the agreement. How this difference is arrived at does not appear in the record.

that time except the defendants, their attorney, deputy sheriffs, and "somebody . . . from the town." The chattels described in the mortgage were bought by Gibbs for $15,500 which was the only bid. Gibbs then saw one Garbose of the Garbose Realty Co. with LaPierre and Garbose agreed to a cancellation of the lease with the corporation and to execute a new lease to the Pequoig Hotel, Inc., a corporation in the name of which LaPierre was to take the lease. Gibbs also went to the selectmen of Athol with LaPierre and surrendered the liquor license held by the corporation and requested the selectmen to issue a new liquor license to the Pequoig Hotel, Inc., which they agreed to do.

On September 6, 1949, as appears from the date of the notes taken by the defendants as part payment of the purchase price, the defendants sold the personal property which they acquired by foreclosure of their mortgage, to LaPierre or the Pequoig Hotel, Inc., for what appears to have been a price of $46,850 which included interest for the term of a note for $41,600 given to the defendant Shea as part of the purchase price. This price appears to have been arrived at in the following manner: sale price per agreement $39,500 and interest on note of $41,600, $7,350. The price was paid in the following manner: deposit $3,500; a note of LaPierre for $1,750 to the defendants; and a note of the Pequoig Hotel, Inc., and LaPierre to the defendant Shea for $41,600. It may be important to observe that the note for $1,750 was without interest and no specific rate of interest is mentioned in the note for $41,600. Both of the notes were in evidence and are indorsed "Pay to the order of G. Wayne Gibbs [Signed] Raymond E. Shea." Shea testified that the only authority he had for his participation in the sale to LaPierre was what he got from Gibbs, who, so far as he knew, was the corporation and whom he treated as such.

The plaintiff in his brief agrees that four credits should be given the defendants on the proceeds of the sale to LaPierre, $4,240 due Gibbs for loans when they took the

chattel mortgage, $2,691.49 for advances by Gibbs to the corporation prior to the foreclosure of that mortgage, the deposit of $3,500 on the sale to LaPierre which was used to pay debts of the corporation, and the sum of $880 being eleven instalments paid on the $41,600 note which was similarly used. These credits amount to $11,311.49 leaving a balance of $35,538.51 which the plaintiff asserts the defendants owe him as said trustee. The defendants in their answer offered to turn over these notes for $1,750 and $41,-600 respectively to the plaintiff but the plaintiff declined to accept them and insists upon money damages.

In view of the foregoing facts as we find them we are compelled to the conclusion that the judge was plainly wrong in at least some of his findings. The evidence does not support the finding that the corporation owed Gibbs more than $4,240 when he and Shea took the mortgage of $15,000 from the corporation. The claim of Gibbs that the corporation owed him $9,450 for salary and travelling expenses is not justified by the evidence. In any event there is no credible evidence to warrant the finding that when the chattel mortgage was given the corporation owed Gibbs the sum of $20,028.38 which included advances made by Gibbs to the corporation and bills paid by Gibbs for and in behalf of the corporation.

Perhaps the most serious error in the findings of the judge is that in which he stated, "There is insufficient evidence to warrant a finding that the defendants Gibbs and Shea or either of them violated their fiduciary relationship with the Athol Hotel Corporation . . . ." The evidence in this aspect of the case all came substantially from the defendants themselves. It clearly not only warranted but required a finding that the defendants were guilty of breaches of their fiduciary duties in several respects; first, by causing the corporation to give them a mortgage for $15,000 at a time when the corporation was insolvent and Gibbs knew it and when Shea was owed nothing. This was in effect giving Gibbs a preference over other creditors of the corporation and in an amount far in excess of what was then owed him.

Moreover the defendants in entering into an agreement with LaPierre to sell him the personal property of the corporation after a foreclosure of such mortgage, at a price greatly in excess of the amount owed Gibbs, committed a breach not only of their fiduciary obligations as directors of the corporation but also of their fiduciary obligations as mortgagees. Plainly the corporation should have had and received the benefit of their transactions with LaPierre. Furthermore the action of Gibbs in negotiating a new lease with the Garbose Realty Co. and in surrendering the former lease to the corporation was a dissipation of an important and valuable asset of the corporation. The same is true of the surrender of the liquor license and the action of Gibbs in bringing about the issuance of a new one to LaPierre or his nominee.

Clearly as to Shea, who admitted that the corporation at no time owed him any money, the mortgage and the note could be avoided. If the defendant Gibbs is regarded as a legitimate creditor at least to some extent, the finding of the judge was not justified for the reason that "the facts call for the application of the rule established by the great weight of authority that directors of a corporation which is insolvent or about to become so cannot obtain for themselves a preference over other creditors in respect to the assets [of the corporation] by taking a mortgage or other security for preëxisting debts. . . . The rule has been placed on the basis that directors are to some extent trustees of the corporate property for the creditors, and that they should not be allowed to use their superior and far more intimate knowledge of the corporation's affairs to the detriment of creditors." *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 289. *Burke* v. *Marlboro Awning Co.* 330 Mass. 294, 300–301.

The relationship of the defendants to the corporation was well expressed in *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, at pages 410–411, where it was said, "The standard of duty established by the law for directors of a corporation such as the defendant is settled. . . . The di-

rectors of an ordinary business corporation often have been called trustees and their relation to the corporation is at least fiduciary. They are bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation. They must act, also, with reasonable intelligence, although they cannot be held responsible for mere errors of judgment or want of prudence. They cannot be permitted to serve two masters whose interests are antagonistic. They are liable if, through their bad faith, financial loss to the corporation results. They are responsible if they unlawfully divert the assets of the corporation." In the instant case we are satisfied that the defendants acted in bad faith and loss to the corporation resulted. They stripped the corporation of all of its assets and left it a bare shell.

It was said in *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, at page 196, with ample citation of authority, "It is settled that the directors of a corporation stand in a fiduciary relationship toward the corporation and that out of this relationship arises a duty of reasonably protecting the interests of the corporation. . . . . Their paramount duty is to the corporation, and their personal pecuniary interests are subordinate to that duty." It is plain from these statements of the law that the defendants in several respects were guilty of a breach of this fiduciary relationship. *Production Machine Co.* v. *Howe*, 327 Mass. 372, 377–378.

Without reciting what was said in *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, 382–383, we are satisfied that the defendants in several respects violated their fiduciary obligations as mortgagees. By entering into the purchase and sale agreement with LaPierre before foreclosure they stifled the bidding at the foreclosure sale. When, after they acquired the property for themselves, they failed to give the corporation of which they were directors the advantages and benefit which would have accrued to the corporation by a sale by the corporation directly to LaPierre, there arose a breach of their fiduciary duty as mortgagees for which they became liable to the plaintiff.

The defendants in their brief confine their argument solely to the principle of law which we recognize, that we do not reverse the findings of a judge in a suit in equity unless they are plainly wrong. The short answer to their argument is that we have hereinbefore determined that the findings of the judge are plainly wrong in several respects. The defendants ignore entirely the several breaches of their fiduciary duties which we have found were present in their dealings with the property of the corporation.

We now come to the question of what damages, if any, the plaintiff is entitled to recover in this suit. Because the judge dismissed the bill he did not come to consider this question. We are of opinion that in the circumstances of this case the plaintiff has an election of two courses to pursue. (1) He may affirm the sale of the property of the corporation and ratify the other transactions of the defendants concerning it, and thereby recover the notes or anything of value which the defendants received in payment; or (2) he may repudiate the sale of this property and all other acts of the defendants with reference to it and recover damages for any loss the corporation sustained because of the actions of the defendants, which we have declared to be improper. Because the plaintiff declined to accept the offer of the defendants to turn over the notes to him, it is plain that he chose to pursue the second course of action.

The decree must therefore be reversed and the suit is to be remanded to the Superior Court for further proceedings to determine the amount of damages, if any, the corporation sustained by reason of the improper and illegal acts of the defendants. Such damages shall include the value of the furniture, furnishings, fixtures, and good will of the corporation, as well as the value of the interest of the corporation in the lease and in the liquor license as of the date of the sale to LaPierre or his nominee.

One matter more remains to be considered. The plaintiff in paragraphs 12 and 13 of the bill alleges that the defendants are the holders of several notes secured by real

estate and chattel mortgages and prays that all of such notes and mortgages be reached and applied in satisfaction of the amount found due the plaintiff. The defendants in their answer admit that Shea is the holder of the notes and mortgages referred to in paragraph 12 of the bill and that he is the holder of the note and mortgage described in paragraph 13 (b). They admit that Gibbs is the holder of the note and mortgage described in paragraph 13 (c) but deny that he is the holder of the note and mortgage described in paragraph 13 (a).

No determination of the interest of the defendants in these notes and mortgages has been made. Such interest may be determined in appropriate proceedings in the Superior Court. Thereafter a special commissioner shall be appointed to take possession of such notes and mortgages in which the defendants may be found to have an interest, to sell the same in such manner as the court may direct, and to apply the proceeds of such sale, if any, in satisfaction of the amount of money which may be found to be due the plaintiff as damages.

The decree is reversed, the suit is remanded to the Superior Court, and after further proceedings there a new decree is to be entered in conformity with this opinion.

*So ordered.*