CAMPANELLA & CARDI CONSTRUCTION COMPANY
*vs.* COMMONWEALTH
(and two companion cases[1]).

Suffolk.     May 5, 1966. — June 16, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Limitations, Statute of. Public Works. Contract,* Performance and breach, For public works.

Where, after completion and acceptance of the work on a public construction project, the contractor received from the contracting authority a semi-final estimate pursuant to G. L. c. 30, § 39G, he knew at that time that the contracting authority was refusing to pay a claim by him for additional compensation excluded from the estimate, and his cause of action upon such claim accrued, and the period of limitation for a proceeding to enforce it commenced, not later than that time.

THREE PETITIONS filed in the Superior Court on July 26, 1965.

Answers in abatement were heard and sustained by *Moynihan,* J.

*Francis V. Matera (David B. Cushman* with him) for the petitioner.

*Burton Peltz,* Assistant Attorney General, for the Commonwealth.

SPALDING, J.     These cases arise from three contracts between the petitioner (company) and the Commonwealth, acting through its Department of Public Works (department), each for the construction of a section of a ,State

[1] The companion cases are between the same parties.

highway in Attleboro or North Attleboro. With respect to each contract, the company brought a petition under G. L. c. 258 seeking additional compensation for work performed by it. The Commonwealth filed an answer in abatement to each petition, asserting that the action had not been commenced within three years after accrual of the cause of action, as required by G. L. c. 260, § 3A (inserted by St. 1943, c. 566, § 1[2]). In each case the answer in abatement was sustained, and the company claimed exceptions. The cases are before us on three bills of exceptions.

All three petitions were filed on July 26, 1965. Thus, the proceedings were properly abated if the company's causes of action accrued prior to July 26, 1962. A cause of action for breach of contract accrues at the time of the breach. *Boston Tow Boat Co.* v. *Medford Natl. Bank,* 232 Mass. 38, 41. Williston, Contracts (Rev. ed.) § 2004. We turn to the facts.[3]

Each of the three contracts in question was made on November 10, 1959. Work on the contracts was completed on varying dates in 1960 and 1961, the latest of which was July 18, 1961. During the course of the work on each contract, partial payments had been made to the company bi-weekly, in accordance with the provisions of the contract. The department formally accepted the jobs as complete on varying dates in 1961, the latest of which was August 1, 1961.

By G. L. c. 30, § 39G (inserted by St. 1955, c. 597, as amended by St. 1956, c. 499), the department was required to prepare a final estimate of the work done on the contracts and the value thereof "[w]ithin . . . [65] days after the work . . . [had] been completed to the satisfaction of the . . . contracting authority," and to pay the amount the final estimate showed as due, subject to exceptions not here

---

[2] "Petitions founded upon claims against the commonwealth prosecuted under . . . [G. L. c. 258] shall be brought only within three years next after the cause of action accrues."

[3] There was virtually no dispute as to the facts. Each case was submitted on a stipulation of agreed facts, documentary evidence, and oral testimony. The judge in his findings adopted the facts contained in the stipulation.

relevant. If there were items in dispute between the contractor and the department, "such items or claims may be excluded from the final estimate, and *payment for such disputed items may be deferred* until such time as agreement has been reached between the contractor and contracting authority or *until such claim has been adjudicated*. In such cases, a semi-final estimate shall be prepared within . . . [the] period of . . . [65] days after completion covering the value of all work performed and all retained percentage on all items of the contract . . . not in dispute but subject . . . [to an exception not here relevant] and with all disputed items or claims excluded" (emphasis supplied).

On two of the contracts, the department knew that the company planned to dispute certain items or make claims for additional compensation. On these contracts, semi-final estimates were sent to the company and payment of the undisputed items followed. The later of these two semi-final estimates was sent January 15, 1962. On the third contract, the department sent the company a final estimate which the company refused to accept because it did not include certain claims made by the company. A semi-final estimate was sent on June 22, 1962, and payment of the items on it was made.

The evidence reveals that since the enactment of § 39G in 1955, the uniform practice of the department has been to send only a semi-final estimate whenever it is aware of a dispute. The only difference between a final estimate and a semi-final estimate was the addition of the word "semi" to the caption of the printed form used. Each contains the same figures as to work done, based on the estimates of the department's engineers. The purpose of the semi-final estimate as stated in the title of St. 1955, c. 597 (inserting G. L. c. 30, § 39G), was "to expedite the payment of sums due to contractors." Prior to the enactment of § 39G, if a contractor "refused to accept [a final estimate], he would not be paid any of the money admittedly due him." If, on the other hand, he accepted, "he would be paid and would have to release all of his claims under the contract."

We think that the company's causes of action accrued not later than the dates of the semi-final estimates. On these dates, the work was completed and accepted and it was then known what, in the Commonwealth's view, was the extent of its obligations. The company knew that the Commonwealth was refusing to pay the claims now sued upon. If the Commonwealth was contractually bound to pay these claims, it was then, if not earlier, in default.

Since the period of limitations in each case commenced[4] at least three years prior to the filing of the petition, we need not now consider the Commonwealth's assertion that causes of action on contracts such as these accrue at some date other than the date on which semi-final estimates are sent, such as the date of completion of the work.

The entry in each case shall be

*Exceptions overruled.*

---

[4] The running of the statute was not suspended by the possibility of an administrative settlement of the dispute within the department. See *John P. Moriarty, Inc.* v. *United States,* 97 Ct. Cl. 338, 340; *L. E. Myers Co. Inc.* v. *United States,* 105 Ct. Cl. 459, 478. See, for the present statutory provisions as to administrative determination of claims, G. L. c. 16, § 5 (b) (as amended through St. 1964, c. 645).