CAROLYN STUART *vs.* TOWN OF BROOKLINE.

Norfolk. December 4, 1991. - March 16, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Practice, Civil*, Stipulation. *Negligence*, Motor vehicle, Police. *Damages*, For personal injuries. *Joint Tortfeasors. Massachusetts Tort Claims Act.*

In a civil action, no reason appeared to vacate a statement of agreed facts upon which a judgment for damages was based. [254-255]

Facts presented in a statement of agreed facts submitted in a civil case were sufficient to permit a determination that the defendant town's employee was negligent in the course of performing his duties as a police officer. [255]

An award of damages in a personal injury action was supported by the evidence presented. [256-257]

Nothing in the provisions of G. L. c. 258, the Massachusetts Tort Claims Act, supported a claim by a town that a settlement by a plaintiff with the town's joint tortfeasor should be deducted from the $100,000 public employer liability cap rather than from the total damages awarded to the plaintiff against the town. [257-258]

CIVIL ACTION commenced in the Superior Court Department on January 20, 1989.

The case was considered by *Roger J. Donahue*, J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George F. Driscoll, Jr.*, Assistant Town Counsel (*David Lee Turner*, Town Counsel, with him) for the defendant.

*Benjamin R. Graybill* for the plaintiff.

ABRAMS, J. The town of Brookline (town) appeals from a judgment entered by a Superior Court judge awarding the plaintiff, Carolyn Stuart, $125,000 in damages arising from a motor vehicle collision between a town police cruiser and

the vehicle in which Stuart was a passenger. The case was submitted to the trial court on a statement of agreed facts and documentary evidence. On appeal, the town argues that: (1) the statement of agreed facts should be discharged and the case remanded for trial; (2) the facts presented in the statement do not support a finding of negligence against the town; and (3) the damages are unsupported by the evidence, or, in the alternative, must be reduced by $25,000. We transferred the case to this court our own motion. We affirm the Superior Court judgment, and conclude that the town is liable to Stuart in the sum of $100,000.

1. *Facts.* The facts, as recited in the statement of agreed facts, are as follows. "Stuart was a passenger in a vehicle operated by Brian T. Ketchen on Route 9 in Brookline. At approximately 12:20 A.M. the vehicle operated by Mr. Ketchen collided with a Town of Brookline police cruiser operated by Patrolman Robert W. Smith. The collision between the Ketchen vehicle and the . . . police cruiser occurred on the eastbound side of Route 9 (Boylston Street) in the vicinity of 850 Boylston Street. Route 9 (Boylston Street) is a divided highway which has two eastbound travel lanes. At the time of the accident, Patrolman Smith, a Brookline police officer since 1960, was acting in the course of his duties as an employee of the defendant, town of Brookline.

"Prior to the accident, the police cruiser operated by Patrolman Smith, was parked in a driveway at 850 Boylston Street. A second police cruiser, operated by Patrolman William Riley, also was parked in the driveway. Patrolman Smith was operating a hand held radar unit to check the speed of passing motorists, and to apprehend motorists who were exceeding the speed limit in an area known for speeding cars and traffic accidents.

"As Patrolman Smith was operating the radar unit, he observed three vehicles in the eastbound lanes of Route 9. When Patrolman Smith first observed these vehicles, they were approximately 200 yards from him. Two of the vehicles were travelling abreast in the right and left lanes of Route 9; the left lane being the one nearest the center guard rail. The

third vehicle, which was operated by Mr. Ketchen, was travelling in the left lane, approximately 50-75 yards behind the first two vehicles and was operating without headlights. Patrolman Smith determined by radar that all three vehicles were exceeding the posted speed limit of forty miles per hour by travelling at a speed of 57 m.p.h. As the vehicles approached Patrolman Smith's location, Patrolman Smith observed that the distance between the front vehicle in the left lane and Mr. Ketchen's vehicle narrowed.

"As the vehicles neared the location of the two police cruisers, Patrolman Riley pulled out, with his blue overhead lights on, in order to stop the first vehicle travelling in the left lane. Patrolman Smith waited for the vehicle travelling in the right lane to pass him, activated his blue overhead lights, and then pulled out onto the right lane of Route 9 in order to stop that vehicle.

"The third car, operated by Mr. Ketchen, was traveling in the left lane and to the rear of Patrolman Smith as Patrolman Smith pulled out onto the right lane of Route 9. After entering Route 9, Patrolman Smith travelled some four to five car lengths in the right lane before his cruiser was struck in the left rear quarter panel by the right front bumper area of Mr. Ketchen's vehicle. At the time of impact, Patrolman Smith was operating his cruiser within the right traffic lane of Route 9's eastbound lanes at a speed of approximately twenty miles per hour. Following the collision between the two vehicles, Mr. Ketchen's vehicle crashed into the center guard rail adjacent to the left lane while Patrolman Smith's vehicle came to a stop in the right lane.

"At the time of the accident the weather conditions were rain and fog. The road surface was wet. After the accident, Mr. Ketchen was issued a traffic citation at the scene for driving without his headlights on and for speeding. Carolyn Stuart did not cause or contribute to the accident in any way.

"Following this accident, Carolyn Stuart was treated for personal injuries (two years prior to the date of the accident, Carolyn Stuart was treated for temporal lobe epilepsy; subse-

quent to the date of the accident, Ms. Stuart continued to suffer from and was treated for temporal lobe epilepsy). In addition, as a result of the accident, Ms. Stuart incurred medical bills in the amount of $12,823.86. At the time of the accident, Ms. Stuart was a jewelry salesperson working thirty hours per week at a salary of $8.00 per hour. She was absent from work from September 27, 1987 through March 1, 1988. As a result of this accident, therefore, Ms. Stuart incurred lost wages in the amount of $4,800.00."

2. *Vacating the statement of agreed facts.* The town asks us to vacate the statement of agreed facts because it would be "conducive to justice" to do so. See *Henry F. Michell Co.* v. *Fitzgerald,* 353 Mass. 318, 322 (1967), citing *Loring* v. *Mercier,* 318 Mass. 599, 601 (1945). We conclude that it is not unjust to hold the town to the statement of facts to which it agreed.

Obviously, at the time it entered into the agreement, the town did not view the statement of facts as inimical to its interests or unjust.[1] Prior to this appeal, the town never asked for modification or rescission of any part of the statement of agreed facts. Having lost the case, the town now complains that the stipulation is unjust because (1) the town's liability, in its opinion, is questionable; (2) medical opinions and bills were admitted without cross-examination; and (3) "[t]he amount of the judgment . . . poses a serious threat to the fiscal welfare of the Town of Brookline and the citizens who depend on its services and programs." The town has not, however, shown that facts were omitted, misstated or inadvertently included in the statement of agreed facts. Cf. *Huard* v. *Forest St. Hous., Inc.,* 366 Mass. 203, 208 (1974) (stipulation set aside because it omitted "seemingly significant information"); *Houghton* v. *Rizzo,* 361 Mass.

---

[1]According to the town, "[a]n order for judgment in the amount of $125,000 was not contemplated, nor was a judgment in favor of the plaintiff contemplated, at the time the [a]greed [s]tatement was drafted."

635, 637 n.1 (1972) (party relieved from portion of stipulation that was clearly inadvertent). In this case, the town gambled that the judge would determine that the town had no liability based on the statement of facts which it agreed to submit. The town lost its gamble. That, however, is no reason to vacate the statement of agreed facts. In hindsight, the stipulation may have been, from the town's point of view, unwise. It was not, however, unjust.

3. *Liability.* The town argues that the stipulated facts do not permit a determination that the town's police officer was negligent. We do not agree.

Smith, in the course of performing his duties as a police officer for the town, had a duty to exercise reasonable care in operating his police vehicle so as not to endanger other motorists and their passengers. *Neil* v. *Holyoke St. Ry. Co.*, 329 Mass. 578, 583 (1952). Smith was obligated to "exercise a degree of care commensurate with the serious consequences that might follow [his] failure to do so." *Id.* Smith acted negligently in pulling out in front of the vehicle in which Stuart was a passenger and which, at the time, was travelling without lights and accelerating from its already high rate of speed, on a rainy, foggy night. Cf. *McGaffee* v. *P.B. Mutrie Motor Transp., Inc.*, 311 Mass. 730, 735 (1942) ("jury had warrant for finding that the weather conditions prevailing and the consequent lack of visibility were such that [the driver's] dealing with the truck as he did was negligent"), and cases cited. The fact that the driver of the vehicle in which Stuart was a passenger also was negligent does not absolve Smith of liability. The accident, and concomitant risk of injury, were foreseeable by Smith as a natural and probable consequence of Ketchen's negligence and the other dangerous conditions that existed at the time of the accident. Cf. *Wilborg* v. *Denzell*, 359 Mass. 279, 285 (1971) ("defendant is liable for the foreseeable intervening conduct of a third party whether that conduct is negligent or not"), and cases cited.

4. *Damages.* The town makes two separate arguments as to damages.[2] First, the town argues that the damage award is not supported by the facts. Second, it argues that the $25,000 settlement Stuart collected from Ketchen, the driver of the vehicle in which Stuart was a passenger, must be subtracted from the public employer statutory damage cap ($100,000), and not from the judge's damage award ($125,000). We hold that the damage award is supported by the facts and that the $25,000 settlement must be deducted from the judge's total damage award.

a. *Damages were supported by the facts.* Stuart submitted evidence that her lost wages totaled $4,800 and her medical bills, $12,823.86. As further proof of damages, Stuart submitted certified medical reports indicating that, as a result of the accident, she had sustained a head trauma resulting in right hemisphere brain injury, exacerbation of her seizure disorder, memory loss, poor concentration, decreased organizational abilities, emotional instability, erratic behavior, and depression. The town offered no evidence disputing any of Stuart's evidence relative to damages.

"The sum of money fixed upon must be such as fairly compensates the injured person for the loss of time, the physical pain and the mental suffering, both that undergone in the past and likely to occur in the future." *Cuddy* v. *L & M Equip. Co.*, 352 Mass. 458, 462 (1967), citing *Cochran* v. *Boston*, 211 Mass. 171, 172 (1912). The fact that there may be an element of uncertainty as to the amount of damages

---

[2]The town also argues that Stuart's injuries were avoidable by the use of reasonable precautions (i.e., wearing a seat belt) and therefore recovery is subject to reduction under the principle of comparative negligence. We need not reach this issue. The town failed to raise this issue in the trial court. Further, the town stipulated, in the statement of agreed facts, that "Stuart did not cause or contribute to the accident in any way." The town never asked the trial judge to modify or vacate that stipulation. We have declined to relieve the town of its stipulation. See 254-255, *supra.* Therefore, this issue is not properly before us. Moreover, the town did not try its case on this theory, and hence may not raise this issue for the first time on appeal. See *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990). See also *United States* v. *Lott*, 870 F.2d 778, 781 (1989).

does not bar their recovery. *Agoos Leather Cos., Inc.* v. *American & Foreign Ins. Co.*, 342 Mass. 603, 608 (1961). While the plaintiff has the "burden of proving beyond conjecture that the injuries which [she] claim[s] to have suffered [are] causally related to the collision," *Gregoire* v. *O'Leary*, 341 Mass. 727, 728 (1960), expert testimony that a causal connection exists, or probably exists, is sufficient. *Comeau* v. *Beck*, 319 Mass. 17, 19 (1946), and cases cited. The damage award is supported by the facts.

b. *The relationship between G. L. c. 258, § 2 (1990 ed.), and G. L. c. 231B, § 4 (1990 ed.).* General Laws c. 258, § 2, provides that public employers cannot be liable for more than $100,000 on any tort "claim." General Laws c. 231B, § 4 (*a*), provides that when a release is given to one of two joint tortfeasors, "it shall reduce the claim against the [other tortfeasors] to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it."

Stuart filed suit against the driver of the police cruiser involved in the accident and the town. Subsequently, the town brought a third-party action for contribution against Brian T. Ketchen, the driver of the vehicle in which Stuart was a passenger. The town obtained a default judgment against Ketchen. After the judge assessed damages in the amount of $125,000, Ketchen was allowed to remove the default that had been entered against him and file an answer to the town's action for contribution. Ketchen moved to dismiss the town's claim for contribution because he had earlier, in good faith, settled the plaintiff's claim, relieving him of liability pursuant to G. L. c. 231B, § 4. His motion was granted. The town then moved to reduce the judgment against it by the $25,000 paid by Ketchen. That motion was denied.

Nothing in G. L. c. 258 suggests that settlements with joint tortfeasors should be deducted from the $100,000 public employer liability cap rather than from the total damages awarded to the plaintiff. In declining to so hold, we respect the purposes of both G. L. c. 258, § 2, and G. L. c. 231B, § 4. The purpose of the former's damage cap is to insure

"that a meaningful recovery will be available to victims of public employee negligence, while simultaneously limiting a public employer's exposure to excessive liability." *Irwin* v. *Ware*, 392 Mass. 745, 772 (1984). An important "policy goal[ ] of [G. L. c. 231B,] § 4 is to ensure that a plaintiff suing multiple tortfeasors does not 'receive remuneration in excess of his actual damages.' " *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 165 (1987), quoting *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179, 182 (1973). Under our holding, a public employer's liability will in no case exceed $100,000, and neither plaintiff nor public employer defendant will receive a windfall.[3] Accordingly, the town is liable to Stuart in the amount of $100,000.

*So ordered.*

---

[3]If we were to accept the town's argument, a public employer would, in many circumstances, receive a windfall, as illustrated by the following hypothetical. A fact finder determines that the amount of damages suffered by a particular plaintiff amounts to $300,000, for which a private and a public tortfeasor are jointly and severally liable. The private tortfeasor settles the claim for $200,000. Under the town's theory, although the plaintiff still suffers $100,000 in unpaid damages, the public tortfeasor has no liability, because the $200,000 settlement must be deducted from the $100,000 statutory damage cap.