## MARGARET M. CHAPMAN vs. UNIVERSITY OF MASSACHUSETTS MEDICAL CENTER.

Worcester. November 1, 1993. - February 17, 1994.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Limitations, Statute of. Contract*, Performance and breach, Employment. *Practice, Civil*, Findings by judge. *Damages*, Breach of contract, Loss of tuition benefits.

An employee's claim for breach of her employment contract with the University of Massachusetts Medical Center was subject to a six-year statute of limitations, G. L. c. 260, § 2, and, since the employee commenced her action well within the six-year period, her action was not time barred. [105-106]

In an action by an employee against her employer seeking damages for breach of her employment contract, the evidence warranted the judge's finding that the employer had breached the contract by acting in bad faith in eliminating the employee's position. [106-111] O'CONNOR, J., dissenting.

In an action by an employee of the University of Massachusetts Medical Center (UMMC) seeking damages for breach of her employment contract, the evidence warranted the judge's award of damages for the amount she paid for her sons' college tuition expenses where, if UMMC had not violated her contract, the plaintiff would not have paid any tuition expenses due to a tuition waiver benefit provided to UMMC employees whose children attend a Massachusetts State college or university. [111-112]

CIVIL ACTION commenced in the Superior Court Department on July 20, 1990.

The case was heard by *Elizabeth Butler*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Deirdre Heatwole* for the defendant.

*Michael J. Michaeles* for the plaintiff.

NOLAN, J. The defendant, University of Massachusetts Medical Center (UMMC), appeals from an adverse judgment entered after a Superior Court judge found that it had violated its employment contract with the plaintiff, Margaret M. Chapman, in that it acted in bad faith in eliminating her position. UMMC contends that the applicable statute of limitations bars this suit and that the judge's finding of bad faith and the award of damages for lost tuition benefits are not supported by the evidence. We transferred the case to this court on our own motion. We affirm.

In March, 1986, UMMC laid off 138 employees, one of whom was Chapman. Chapman's employment contract in effect at the time was "contingent upon the availability of funds." In July, 1990, Chapman filed suit against UMMC, seeking, inter alia, damages for breach of contract and breach of an implied covenant of good faith. Chapman alleged that, during her employment, UMMC failed to follow proper bidding procedures, that she had called this practice to UMMC's attention, and that UMMC terminated her employment because she pointed this out. After a jury-waived trial, the judge ruled that the statute of limitations did not bar this suit but dismissed Chapman's claim alleging a violation of an implied covenant of good faith, holding that this cause of action is only available for employments at will. However, reasoning that every contract implies good faith and fair dealing between the parties, the judge addressed the duty of good faith within the breach of contract claim. The judge then found that, even though UMMC lacked funds at the time of the layoff, UMMC violated its employment contract with Chapman in that it acted in bad faith in terminating Chapman's employment. The judge awarded Chapman $243,144.25 for lost salary, health insurance, and college tuition expenses.

1. *Statute of limitations.* UMMC contends that Chapman's claim for breach of contract is barred by the statute of limitations. Actions for breach of contract accrue at the time of breach. *Campanella & Cardi Constr. Co.* v. *Commonwealth*, 351 Mass. 184, 185 (1966). Chapman's cause of ac-

tion arose in March, 1986, when her contract was terminated, but she instituted this action in July, 1990, over four years later. The judge held that G. L. c. 258 (1992 ed.), the Massachusetts Tort Claims Act, governs this action, and that, under G. L. c. 260, § 3A (1992 ed.), a three-year statute of limitations applies. The judge, however, held that, since Chapman filed this action within one year after her prior Federal action against UMMC had been dismissed on a "matter of form," G. L. c. 260, § 32 (1992 ed.), saved the action. Because we hold that Chapman's contract claim is subject to a six-year period, and not a three-year period, we need not consider UMMC's contention that the judge erred in ruling that G. L. c. 260, § 32, saved this action. General Laws c. 260, § 3A (1992 ed.), provides that actions brought under G. L. c. 258 against the Commonwealth must be commenced within three years after the cause of action accrues. Chapman's complaint makes clear that this action was not brought under G. L. c. 258. Instead, Chapman's contract claim is subject to a six-year period under G. L. c. 260, § 2 (1992 ed.). Chapman commenced this action well within the six-year period. Her action is not time barred.

2. *Breach of contract.* The judge made detailed findings of fact and rulings of law. The findings pertinent to the issue of breach which UMMC does not contest are as follows. UMMC is a part of the University of Massachusetts, a public institution of higher education of the Commonwealth. The university is governed by a board which has been granted authority under G. L. c. 75 (1992 ed.) to determine the terms and conditions of employment at UMMC. UMMC is comprised of a medical school and hospital and employs over 4,000 people.

Prior to working at UMMC, Chapman had worked for two years at a hospital in New York, and then at a hospital in Rhode Island. When she left her job in Rhode Island to become employed at UMMC, Chapman was the supervisor of her department. Chapman does not have a college degree. In 1978, Chapman was hired by UMMC as department head for unit services. In that position, she was responsible

for the patient support departments of secretarial staff, delivery, mail room, patient reception staff, laundry, linen, and transportation. In 1984, she became the assistant hospital director. In this position, she reported directly to the chief operating officer of the hospital, David Scarbeau. Three associate hospital directors also reported directly to Scarbeau. No other employees reported directly to Scarbeau. None of the three associate directors was employed at UMMC longer than Chapman. Chapman had substituted for them when needed and had trained one of them. Throughout her employment at UMMC, Chapman's performance was never criticized and she had regularly received merit raises in her salary.

Her written employment contracts were the standard form for the professional staff. Chapman's last contract, and the one that is at issue, was for a five-year period, December 10, 1985, through December 9, 1990. The reverse side of the form provided, in pertinent part:

"1. All appointments to the professional staff of the university are contingent upon availability of funds.

"2. All members of the professional staff of the University are employed pursuant to and subject to the policies, rules and regulations adopted by the board of trustees of the university as amended, revised, or repealed from time to time, under the provisions of chapter 75 of the General Laws, as amended or revised from time to time."

All payroll expenses for the hospital were met from patient revenues. Prior to making its offer of a renewed contract, UMMC had in place its personnel payroll for the fiscal year beginning July 1, 1985.

Due to changes in health care reimbursement in 1985, UMMC began experiencing a downturn in patient revenues. To meet the projected deficits for the current and next fiscal years, UMMC initiated several cost-cutting measures, including a hiring freeze and a cutback in nonpayroll expenses.

Despite these efforts, UMMC determined that a layoff of employees would be necessary. Consideration of a layoff started in late 1985, around the same time that UMMC signed Chapman's contract. The hospital suffered a shortage of funds. This shortage was hospital wide and was not specifically directed at Chapman's position.

In March, 1986, UMMC notified all their employees that due to financial conditions, a layoff would be implemented. Each department head was directed to cut payroll expenses by six per cent. Performance was not a criterion used in identifying positions for layoff. Instead, department heads had to identify positions which would not adversely affect patient care, and the least senior person in each of these positions. Those laid off had a right to resume a former position by "bumping" a less senior employee holding such position.

The human resources department of UMMC administered the layoff pursuant to the layoff policy approved by the board of trustees, keeping track of all positions which had to be eliminated, and determining the "bumping" or displacement rights of all affected employees. Shortly thereafter, the head of human services notified the employees whose positions were to be eliminated of this action. In all, approximately 138 employees, including Chapman, were laid off. Of these, thirteen employees resumed their positions within three weeks and another sixty to seventy employees were rehired at UMMC within one year. Chapman was not rehired.

Scarbeau, Chapman's immediate supervisor, as the chief operating officer, oversaw the entire layoff. He was also required to review the twenty to thirty positions in his department in order to meet the administration's directive to reduce payroll in each department by six per cent. Chapman was the only person in her job category and thus was the least senior for layoff purposes. Since none of the previous positions she had held was in existence, she was not allowed to "bump" any employee, including any of the three associate hospital directors. Scarbeau designated Chapman's position as expendable. Every department head who had such responsibility had discretion. Scarbeau could have saved Chap-

man's position by selecting another employee or employees to be laid off. After her layoff, Chapman's duties were taken by one of the associate directors or left undone.

Approximately two months prior to her layoff, Chapman had complained to Scarbeau regarding the purchasing of radiation equipment costing over $300,000. Chapman told Scarbeau that UMMC had not complied with the proper purchasing procedure for the equipment. Scarbeau's response was that she should "mind her own business and she would be spared in the upcoming layoffs."

The judge found that UMMC had breached Chapman's employment contract by acting in bad faith in eliminating her position. UMMC contends that the evidence does not support the judge's finding of bad faith. UMMC argues that the finding of bad faith was based on inferences from erroneous findings of fact and neutral evidence. The judge's finding of bad faith was based primarily on Chapman's uncontradicted testimony at trial that, two months prior to the layoff, she had complained to Scarbeau and he had responded that she should "mind her own business and she would be spared in the upcoming layoffs." The judge supported her finding with several other preliminary findings of facts. These findings are: that, since no one held Chapman's specific job title, she could not exercise any displacement or "bumping" rights; that Chapman was specifically qualified to be eligible to bump other positions in her department, noting that some of her duties after her termination were reassigned to one of the three associate hospital directors who had less seniority than Chapman and whom she had trained for his job; that a few months before the layoff, Scarbeau signed the five-year contract between Chapman and UMMC; that Scarbeau chose Chapman's position, although he could have chosen twenty to thirty other positions to eliminate; and that seventy-three to eighty-three of the 138 employees laid off in March, 1986, were rehired within one year.

In this case, bad faith would be terminating Chapman's employment for any reason other than because of a lack of funds. "The sufficiency of the evidence is a question of law

. . . subject to review by this court." *Howard* v. *Burlington*, 399 Mass. 585, 588 (1987), citing *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 200 (1974). We give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses. *Seder* v. *Gibbs*, 333 Mass. 445, 446 (1956). The judge's findings of fact will not be set aside unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). However, "[i]nferences from the basic facts . . . are open for our decision, and the inferences drawn by the trial judge are entitled to no weight in this court." *Simon* v. *Weymouth Agric. & Indus. Soc'y*, 389 Mass. 146, 148 (1983). A judge's ultimate findings which are inconsistent with his subsidiary findings shall be set aside. *National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 574-575 (1984).

We construe the evidence most favorably to Chapman to determine whether bad faith can reasonably be inferred from any of the evidence. *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 847 (1983). The inferences, however, must be based on probabilities, not possibilities, and not the result of "mere speculation and conjecture." *Id.* at 848, quoting *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976).

Following the above-stated approach, we conclude that there was evidence from which the judge could reasonably infer that Scarbeau acted in bad faith when he selected Chapman's position for elimination. Chapman testified that two months prior to the layoff, in response to her complaint to Scarbeau concerning the propriety of recent purchases, he told her to "mind [her] own business . . . and . . . he hoped that he would spare [her] in the next layoff." Scarbeau subsequently selected Chapman's position for elimination. The judge could reasonably infer from this testimony that Scarbeau threatened Chapman and that Scarbeau carried through on his threat when he selected Chapman's position for elimination. UMMC's contention that the judge improperly inferred bad faith from neutral evidence is without merit. The testimony of Scarbeau's threat is not neutral evi-

dence. The judge properly noted the other findings as support of the finding of bad faith because these other findings were consistent with Scarbeau's choosing Chapman's position for reasons other than the unavailability of funds. The evidence that Chapman had helped train one of the associate hospital directors and had substituted for them when needed supports the judge's finding that Chapman's position was similar to the position held by the three associate hospital directors. The finding of similarity of positions was a basis of the finding that Chapman was sufficiently qualified to be eligible to "bump" others in her department. The evidence at trial supports the judge's finding that UMMC acted in bad faith in eliminating Chapman's position. There was no error.

3. *Assessment of damages.* The judge awarded Chapman tuition expenses. If she had continued to be employed at UMMC, Chapman would have been entitled to a tuition waiver benefit. This benefit waives tuition for employees' children who attend a Massachusetts State college or university. It waives tuition only and not fees. Chapman testified that both of her sons had planned to attend a Massachusetts State college or university prior to her being laid off and that she had paid for one-half of their college tuition and fees at other colleges. She submitted numerous checks totalling $33,863.50, and then testified that she had paid this amount in tuition and fees. Chapman also submitted several itemized bills. The judge awarded Chapman $29,497.25. It is not clear how the judge arrived at this figure. UMMC contends that Chapman submitted insufficient evidence to show that she paid this amount for tuition. This contention is without merit. Chapman's testimony that she had paid the submitted checks for her sons' college tuition and fees along with the several bills indicating that fees comprised only a small portion of her payments is sufficient. "The fact that there may be an element of uncertainty as to the amount of damages does not bar their recovery." *Stuart* v. *Brookline*, 412 Mass. 251, 256-257 (1992). Furthermore, there is no merit in UMMC's contention that the amount should have been determined with reference to only the amount of tuition

charged at Massachusetts State universities and colleges and not with reference to the tuition charged at the schools her sons actually attended. The "basic principle of contract damages is that the aggrieved party should be put in as good position as if the other party had fully performed." *Laurin* v. *DeCarolis Constr. Co.*, 372 Mass. 688, 691 (1977). If UMMC had not violated her contract, Chapman would not have paid any tuition expenses. Chapman was entitled to the amount she paid for her sons' tuition expenses. There was no error.

*Judgment affirmed.*

O'CONNOR, J. (dissenting). The Superior Court judge explained in her memorandum of decision that "[w]ere there no evidence of bad faith by Scarbeau in applying the lay off cuts to Chapman, as opposed to other hospital employees, UMMC's decisionmaking process would remain undisturbed by this Court. Here, however, there was sufficient credible evidence that Chapman's termination, concededly discretionary with her supervisor, was motivated by Scarbeau's desire to rid himself of Chapman." It follows that, if the judge was mistaken in concluding that there was evidence sufficient to warrant an inference of bad faith on Scarbeau's part in applying the layoff cuts to Chapman, judgment should be entered for UMMC.[1] In my opinion, there was no evidence of bad faith on Scarbeau's part.

[1]The court states, *ante* at 110, "We give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses. *Seder* v. *Gibbs*, 333 Mass. 445, 446 (1956). The judge's findings of fact will not be set aside unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974)." "A finding is 'clearly erroneous' when *although there is evidence to support it*, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (emphasis added). *Kendall* v. *Selvaggio*, 413 Mass. 619, 620-621 (1992), quoting *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986). In determining whether the evidence was legally sufficient to warrant a finding that Scarbeau acted in bad faith, which is the critical question on appeal due to the trial judge's

The term "bad faith" "imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud." *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416 (1937). As the court says, *ante* at 110, the judge's finding of bad faith was based primarily on one brief discussion between the plaintiff and Scarbeau concerning the purchase of equipment. The plaintiff testified that, in response to her criticism that the purchase had been made without competitive bidding "when we were counting every dollar," Scarbeau "told [her] just to mind [her] own business, that it was going to happen; and he said that he hoped he would spare [her] in the next layoff." There was no evidence that, following that exchange, the plaintiff disregarded Scarbeau's advice to "mind [her] own business" by again mentioning the equipment purchase to Scarbeau or anyone else. The evidence of Scarbeau's displeasure with the plaintiff was slim at best. In any event, it did not warrant a finding that the elimination of the plaintiff's position was done in bad faith.

There is not a scintilla of evidence that Scarbeau thought that retention of the plaintiff's position would have served UMMC's interest better than the retention of a position that was in fact retained. There also is no evidence that retaining the plaintiff's position rather than one of the positions actually retained would in fact have better served UMMC. The absence of such evidence is critical. Even if the judge would have been warranted in finding that Scarbeau was displeased with the plaintiff, the evidence does not warrant a finding that Scarbeau was motivated by that displeasure rather than by an honest judgment that the required reduction in payroll expenses could be accomplished with the least damage to UMMC's legitimate interests by eliminating Chapman's position. It is of no consequence that "Scarbeau could have

---

statement that, if the evidence were insufficient, she would have found for UMMC, it is inappropriate to "give due weight to the findings of the judge."

saved Chapman's position by selecting another employee or employees to be laid off." *Ante* at 109. Scarbeau owed fidelity to UMMC, not just to the plaintiff. The discussion between the plaintiff and Scarbeau, the evidence the judge principally relied on to find bad faith, was insufficient to show dishonesty or wrongdoing on Scarbeau's, and therefore UMMC's, part.

Perhaps the court would agree that, if the evidence the judge principally relied on was legally insufficient to warrant a finding of bad faith, no discussion of the so-called "supporting evidence" is necessary. I mention it only briefly. The court states that "[t]he evidence that Chapman had helped train one of the associate hospital directors and had substituted for them when needed supports the judge's finding that Chapman's position was similar to the position held by the three associate hospital directors. The finding of similarity of positions was a basis of the finding that Chapman was sufficiently qualified to be eligible to 'bump' others in her department." *Ante* at 111. The fact that, in accordance with the usual operation of UMMC's legitimate seniority system, a system that preexisted Scarbeau's decision, Chapman had no "bumping" rights after her position was eliminated, says nothing about whether Scarbeau's decision was motivated by a desire to cut payroll expenses in a way most beneficial to the legitimate interests of UMMC, or by a desire to hurt the plaintiff. The total evidence in this case was, as a matter of law, insufficient to warrant a finding of bad faith. Therefore, in keeping with the judge's advice that, if there had been no evidence of bad faith, the judge would have left "UMMC's decisionmaking process . . . undisturbed," I would order the entry of judgment for the defendant.