CLAMP-ALL CORPORATION *vs.* ANTHONY J. FORESTA
& another.[1]

No. 99-P-1714.

Essex. December 7, 2001. - February 15, 2002.

Present: LAURENCE, MASON, & DOERFER, JJ.

*Practice, Civil,* Default, Reconsideration, Vacation of judgment, Substitution, Directed verdict, Judgment notwithstanding verdict, Damages, Attorney's fees, Interest. *Damages,* Breach of contract, Consumer protection case, Mitigation, Attorney's fees, Interest. *Consumer Protection Act,* Attorney's fees. *Interest.*

The judge in a civil action did not abuse his discretion either in entering a default judgment against the plaintiff or in subsequently refusing to vacate the judgment, where the plaintiff's failure to comply with the rules of discovery and the court's discovery orders was persistent and flagrant, where the plaintiff was a sophisticated litigant, and where, in its motions to vacate the judgment, the plaintiff either did not show a good reason to remove the default and the existence of meritorious defenses, or failed to offer any substantial reason why it had not filed the required affidavit with an earlier motion. [805-809]

The judge in a civil action did not err in allowing an individual party to substitute a corporation as the plaintiff on counterclaims, where the substitution was designed merely to correct a technical mistake and, hence, was authorized by Mass.R.Civ.P. 21. [809-810]

In a civil action, the judge did not err in instructing the jury that the only issue before them was the question of damages, where the necessary effect of a default judgment that had been entered in the case was to leave open only the question of damages. [810]

In a civil action on the damages portion of a claim regarding a marketing support agreement, the judge was not required to permit the introduction of evidence that the plaintiff had failed to comply with the terms of the marketing agreement after the defendant had terminated the agreement, where the defendant's termination of the agreement relieved the plaintiff of any further obligation to comply with the agreement; on the other hand, the judge properly permitted the plaintiff to estimate the defendant's sales for purposes of determining the commissions owed, since no actual sales figures were available for the period in question and the estimates were reasonably based on actual sales figures for prior years. [810]

At the civil trial of the damages portion of a counterclaim regarding a marketing support agreement, the judge did not err in failing to instruct the jury

[1]Caliber Consulting Corporation.

that they were required to deduct from the plaintiff's recovery amounts that the corporate plaintiff or its individual alter ego had earned or could have earned from sources other than the defendant during the damages period, where there was no evidence that the plaintiff had in fact received any such amounts; however, the judge erred in failing to instruct the jury to deduct payments made by the defendant to the individual alter ego pursuant to the noncompetition provisions of the marketing agreement, and this court amended the judgment to provide for such a deduction. [811]

The judge in a civil action did not err in denying the defendant's motion for a nonsuit against the plaintiff for failure to comply with a trial subpoena and the defendant's prior discovery requests, where the plaintiff had made a reasonable effort to comply with the subpoena which had been served on the plaintiff on the first day of trial, and where the discovery requests had not been made within the deadline established by the court and the defendant had failed to obtain any order compelling compliance with the requests; likewise, the judge did not err in denying the defendant's claim for a directed verdict on one claim or in denying the defendant's motion for judgment notwithstanding the verdict. [811-812]

Where a default judgment entered in a civil action established the defendant's liability not only for breach of contract, but also for a violation of G. L. c. 93A, § 2, and where the judge explicitly adopted the jury's award on the breach of contract claim as the plaintiff's damages on its c. 93A claim, the plaintiff was entitled to an accompanying award of attorney's fees and costs, including expert witness fees; moreover, where the trial judge specifically found that it was difficult to sort out what work bore on the c. 93A claim and what did not, and accordingly considered several factors other than the amount of time specifically devoted to the c. 93A issues in determining the amount of the award, this court declined to disturb the award. [812-814]

This court concluded that prejudgment interest on damages awarded at a civil trial involving a marketing support agreement should have been calculated from the date each commission payment under the agreement was due, rather than from the date on which the complaint was filed, and directed that the interest be recalculated. [814]

CIVIL ACTION commenced in the Superior Court Department on December 17, 1993.

The case was heard by *Joseph A. Grasso, Jr.,* J., on a motion to dismiss for failure to comply with court orders, and motions for relief from judgment were heard by him; the damages portion of the case was tried before *Howard J. Whitehead,* J., and motions to nonsuit, for judgment notwithstanding the verdict, and for attorney's fees, costs, and sanctions were heard by him.

*C. Peter R. Gossels* for the plaintiff.

*Craig J. Ziady* for the defendants.

MASON, J. A judge of the Superior Court, acting pursuant to

Mass.R.Civ.P. 37(b)(2), as amended, 390 Mass. 1208 (1984), caused a default judgment to be entered against the plaintiff, Clamp-All Corporation (Clamp-All), for failure to comply with the court's discovery orders. The judgment dismissed Clamp-All's claims against the defendant, Anthony J. Foresta, and also established Clamp-All's liability on each of the counterclaims brought against it by Foresta. The counterclaims alleged that Clamp-All had committed a breach of a marketing support agreement it had entered into with Caliber Consulting Corporation (Caliber), a company owned by Foresta, and had also violated G. L. c. 93A, by terminating the agreement in violation of its terms and to coerce Foresta to accept lower commissions than he was entitled to under the agreement. A separate counterclaim also alleged that Clamp-All had breached an insurance agreement it had entered into with Foresta by failing to pay premiums on the policies covered by the agreement.

Following a jury trial before a different judge to determine damages, the jury found such damages to be $723,906 on the claims pertaining to the marketing agreement and $15,775 on the claim pertaining to the insurance agreement. The trial judge then conducted a further evidentiary hearing and determined that Clamp-All was not liable for multiple damages since its violation of G. L. c. 93A had not been wilful. The judge accordingly caused judgments to be entered against Clamp-All in the amounts determined by the jury, plus interest from the date Clamp-All had filed its complaint. The judge, acting pursuant to G. L. c. 93A, § 11, also awarded attorney's fees and costs.

On appeal, Clamp-All claims that the judge abused his discretion in entering the judgment of default and also in failing to grant Clamp-All's subsequent motions to vacate the default. Clamp-All also claims that the trial judge committed numerous errors in connection with the proceedings to determine damages and in determining the amount of attorney's fees to be awarded under G. L. c. 93A, § 11. For the reasons discussed below, we vacate the judgment pertaining to the marketing agreement and remand for the entry of a new judgment deducting $10,000 from the amount of the damages awarded in the judgment, and recalculating prejudgment interest. We affirm the judgment pertaining to the insurance agreement.

*The facts.* We set forth in some detail the facts found by the trial judge or shown by the record in order to place in context Clamp-All's numerous claims of error.

Clamp-All has its offices in Haverhill, and produces couplings which are used to join piping that conveys waste water. Clamp-All's product is unique in the industry.

Prior to 1991, Foresta was president and a principal stockholder of Clamp-All. His particular forte was marketing, which he accomplished by convincing regulatory bodies, architects, and entities to require the use of Clamp-All products in various construction projects on which they were working.

In 1991, however, as the result of Clamp-All's proceedings under Chapter 11 of the United States Bankruptcy Code, Foresta's ownership interest in Clamp-All became minimal and he was replaced as president of the corporation by David J. Palmer, an attorney who had been a member of the bar of Massachusetts since 1959. At this time, Foresta caused Caliber to be incorporated as a separate marketing support company, with Foresta as its sole owner and employee.

In February, 1991, Clamp-All and Caliber entered into a marketing support agreement which called for Caliber to perform various marketing and consulting services for Clamp-All, and also to visit and train each of Clamp-All's independent sales representatives at least once a year. The agreement provided that Clamp-All would pay Caliber commissions for such services equal to five percent of its gross sales less returns, allowances, discounts, and freight charges, and would also reimburse Caliber for certain of its start-up business expenses. The agreement further provided that it would continue in effect for successive one-year terms subject to the right of either party to cancel the agreement by providing two months' written notice of such cancellation to the other party. In the event the agreement was terminated by Clamp-All, the agreement provided that both Foresta and Caliber would be subject to a two-year noncompetition period during which they would be paid for performing ongoing consulting services in accordance with a formula set forth in the agreement.

In April, 1991, the parties amended the marketing support agreement to provide that it would remain in effect for as long

as certain personal guarantees that Foresta and his wife had agreed to provide in connection with certain loans Clamp-All had obtained from Middlesex Savings Bank remained in effect and Clamp-All was meeting or exceeding certain specified sales goals. At this same time, Clamp-All and Foresta also entered into a separate agreement providing for the exchange of certain insurance policies each of them were separately maintaining on Foresta's life. The first of these policies (no. 6939500) was in the face amount of $1,000,000, and was being maintained by Clamp-All subject to an interest held by the bank. The second of these policies (no. 7228100) was in the face amount of $260,900 and was being maintained by Foresta. The agreement, as amended, provided that the parties would transfer both of these policies into an insurance trust which would continue in effect until the bank had released its interest in policy no. 6939500, at which time policy no. 6939500 would be transferred to Foresta's wife, while policy no. 7228100 would be transferred to Clamp-All. The agreement further provided that, while the policies remained in the trust, Clamp-All would pay the premiums due on both policies and then deduct Foresta's proportionate share of such premiums from the commissions due Caliber under the marketing support agreement.

The parties operated under their agreements without incident for a period of several months. In the latter part of 1992, however, Clamp-All's senior officers determined that there was a need to reduce expenses because the company's sales were down. They also became concerned that Foresta was not fully complying with the provisions contained in the marketing support agreement requiring him to visit and train each of the company's independent sales representatives at least once a year. Accordingly, in August or September, 1992, Frank Logan, who was Clamp-All's chief financial officer, began meeting with Foresta and proposing that the parties enter into a new agreement which would require him to provide fewer services, but would also reduce the commissions to be paid to him. Foresta, however, insisted that the parties' existing agreement should remain in effect.

On October 30, 1992, Clamp-All sent Foresta a letter notifying him that it was terminating the existing agreement as of the

end of December, 1992, and again inviting him to enter into a new agreement. Foresta continued to refuse to do so. Clamp-All accordingly terminated the agreement at the end of December, 1992, and ceased paying any commissions to Caliber. Clamp-All did, however, continue paying Foresta $1,000 per week pursuant to the noncompetition provisions contained in the agreement. In March, 1993, however, Clamp-All ceased making even these payments when Foresta refused its request to attend a meeting of the American Society for Testing Materials. Foresta was eventually required to relocate his family to Wisconsin and accept a job with a company there.

In September, 1993, the bank released its interest in policy no. 6939500, causing the insurance trust to be terminated in accordance with its terms. Shortly thereafter, in December, 1993, Clamp-All commenced the instant action by filing a complaint against Foresta in Superior Court. The complaint alleged that Clamp-All was entitled to reimbursement for premiums it had paid to keep the insurance policies in effect but had not previously recovered from Caliber.

In June, 1994, Foresta filed an answer and two counterclaims. The counterclaims alleged that Clamp-All had improperly terminated the marketing support agreement and had breached the insurance agreement by failing to pay all the premiums due on the policies. In February, 1996, Foresta filed a motion to add a third counterclaim alleging that Clamp-All had terminated the marketing support agreement in order to compel Foresta to accept lower commissions, and had thereby violated G. L. c. 93A, § 2. This motion was allowed on February 23, 1996.

At or about the same time, Foresta served on Clamp-All a set of written interrogatories and two sets of requests for production of documents. When Clamp-All did not respond to any of these discovery requests within the time prescribed by the applicable rules, Foresta filed an application pursuant to Mass.R. Civ.P. 33(a), as amended, 368 Mass. 906 (1976), for a default judgment to be entered against Clamp-All due to its failure to answer the written interrogatories. He also filed a motion to compel responses to his document requests.

In response to Foresta's request, the clerk on March 21, 1996, issued a notice of default in accordance with rule 33(a).

Thereafter, Clamp-All filed a general objection to all of Foresta's interrogatories. It also filed an opposition to Foresta's motion to compel responses to his document requests, stating that "[a]ctual documents ready for production probably exceed 15,000 . . . [and] were in the office of counsel for Clamp-All."

In response to a further application by Foresta, a judge of the Superior Court on May 2, 1996, entered a default judgment against Clamp-All for failure to answer Foresta's interrogatories. Promptly thereafter, Foresta filed a motion for an assessment of damages. Clamp-All opposed the motion and also requested that the default judgment be vacated.

A hearing was held on the parties' various motions on May 30, 1996. The judge entered an order at the conclusion of this hearing directing that (1) Clamp-All produce all documents in the possession of its counsel on or before June 4, 1996; (2) Foresta's counsel notify Clamp-All's counsel on or before Monday, June 10, 1996, whether additional documents were necessary; (3) Clamp-All produce any such necessary additional documents at its offices by June 21, 1996; and (4) a further hearing be held on June 25, 1996.

Notwithstanding this order, Clamp-All did not produce any documents at all by June 4, 1996. Rather, at some time thereafter, it sent counsel for Foresta a box containing approximately 1,200 pages which were responsive to only some of Foresta's document requests, and included many duplicates. Accordingly, after holding a further hearing on June 25 in accordance with her prior order, the judge caused a further order to be entered which, after noting that Clamp-All had "deliberately refused to comply with discovery requests and this court's order," directed Clamp-All to (1) provide answers to the outstanding interrogatories and also written responses to Foresta's document requests within seven business days of the date of the order; (2) make the documents identified by its responses available for review by counsel for Foresta at Clamp-All's offices on July 8, 1996; and (3) pay sanctions in the amount of $250 plus attorney's fees and costs to be assessed by the court. At the same time, the judge entered an order vacating the default judgment that previously had been entered against Clamp-All.

Shortly thereafter, on July 2, 1996, the judge awarded Foresta

$3,075 in attorney's fees and $113 in costs which, when combined with the $250 in sanctions previously awarded, brought the total amount owed by Clamp-All to Foresta to $3,438. Clamp-All, however, did not pay any such amount. It also failed to produce any answers to Foresta's written interrogatories or responses to Foresta's first and second document requests within the seven-day period prescribed by the judge. Accordingly, on July 8, 1996, Foresta filed an emergency motion to dismiss for failure to comply with the court's orders. Clamp-All did permit counsel for Foresta to view various documents at its offices on July 8, 1996, as required by the judge's June 25 order, and also, on August 5, 1996, served partial answers to Foresta's interrogatories. It did not, however, file any opposition to Foresta's emergency motion.

On September 17, 1996, pursuant to notice,[2] a second Superior Court judge held a hearing on Foresta's emergency motion. Clamp-All failed to appear at this hearing. After hearing from counsel for Foresta, the judge entered an order pursuant to Mass.R.Civ.P. 37(b)(2) dismissing Clamp-All's complaint with prejudice and granting Foresta a judgment of liability on his counterclaims. The order further awarded Foresta his attorney's fees and costs incurred in connection with his emergency motion.

On November 5, 1996, Foresta filed a motion for assessment of damages and entry of final judgment. Almost two months later, on December 20, 1996, Clamp-All, represented by new counsel, filed a motion for relief from judgment together with affidavits of Palmer and Logan, and also of James A. Tarara, who was Clamp-All's vice president and general manager.

Palmer stated in his affidavit that Clamp-All's former counsel had informed him of Foresta's interrogatories and document requests but had not informed him that the documents had to be produced before any deadline, and had not told him either that

---

[2]At the start of this hearing, the judge noted that "according to the papers that are before me today, the clerk's office sent notice of today's hearing to the parties on August 30, 1996, advising them that a hearing would be held today on [Foresta's emergency] motion." The judge also ascertained from counsel for Foresta that he had served a copy of the emergency motion on counsel for Clamp-All by mail on July 5, 1996, and had not received any response.

Foresta had moved for defaults or that the court had granted any such defaults. Tarara and Logan likewise stated that they were aware of Foresta's discovery requests, but were not aware of any of the default orders.

Foresta filed an opposition to Clamp-All's motion on January 31, 1997. Clamp-All alleges that, some time thereafter, the clerk gave it notice that a hearing would be held on its motion on March 11, 1997, at 2 P.M.[3] Nevertheless, on February 21, 1997, the second judge entered an order denying the motion. The judge also awarded Foresta $2,093 in attorney's fees and $56.20 in costs as allowed in his prior order.

On March 11, 1997, Clamp-All filed a motion for reconsideration, together with (1) a memorandum of law, (2) a supplemental affidavit of Palmer, and (3) written answers to Foresta's interrogatories. Clamp-All stated in its motion that it had not submitted its memorandum of law and supplementary affidavit earlier because it had needed time to obtain documents from its former counsel "to prove that its claim and the defenses to [Foresta's] counterclaims have merit," and it was also anticipating that a hearing would be held on the motion. Palmer stated in his supplemental affidavit that Clamp-All had terminated its marketing agreement with Caliber because it had determined that Foresta was failing to comply with his obligations under the agreement.

The second judge denied Clamp-All's motion for reconsideration by order dated March 31, 1997. Thereafter, Clamp-All filed a petition for relief with the single justice of this court pursuant to G. L. c. 231, § 118, first par., but this petition was denied as untimely. Clamp-All subsequently filed a petition for reconsideration and, when this petition was denied, a notice of appeal to the full court. This notice was struck as improper on May 22, 1997. Clamp-All then filed with the Supreme Judicial Court a petition for relief pursuant to G. L. c. 211, § 3, but this petition was denied on June 19, 1997.

---

[3]The docket sheet does not reflect the giving of any such notice. Clamp-All instead cites to a stamp included on the cover sheet of its motion, indicating that a hearing had been scheduled on the motion for March 11, 1997, at 2 P.M. The record does not indicate when this "notice" was sent or even if it was sent before the judge had ruled on Clamp-All's motion.

On June 23, 1997, Clamp-All filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, which operated to stay the scheduling of any damages hearing. On October 21, 1997, however, Foresta obtained relief from the stay "solely to allow the state court to reduce [his] claim to judgment."

In December, 1997, Clamp-All filed a second motion for relief from judgment based on alleged "newly discovered evidence" that (1) Clamp-All had filed its answers to Foresta's interrogatories on March 11, 1997, and had subsequently paid the sanctions ordered by the court and produced all of the documents that Foresta had requested on or before April 25, 1997; (2) Clamp-All had been compelled to file its petition for protection under the United States Bankruptcy Code as a result of the court's default judgment; and (3) Clamp-All's former attorney had been formally admonished by the Board of Bar Overseers on October 16, 1997. Clamp-All further asserted in its motion that the default judgment was void because Foresta had failed to join Caliber as a party plaintiff to his counterclaims even though the marketing agreement provided that commissions should be paid to Caliber, rather than Foresta.

The second judge denied this second motion for relief from judgment by order dated February 2, 1998. Thereafter, a jury trial to determine damages was held before a third judge in March, 1998. At the start of this trial, the judge allowed a motion by Foresta to substitute Caliber as the party plaintiff in his counterclaims regarding the marketing agreement.

Thomas P. Sullivan, a certified public accountant, thereafter testified on behalf of Caliber that he had examined all of Clamp-All's sales records that had been provided to him and had determined that the commissions owed to Caliber under the marketing support agreement amounted to $723,906. Sullivan further testified that, in making this determination, he had calculated Clamp-All's sales only through May 31, 1998, which was the date Clamp-All's loan from the bank was due to be repaid and, hence, the personal guarantees of Foresta and his wife could be expected to expire, and had then applied the five percent commission figure provided by the marketing support agreement to those sales.

Marietta Amy, a senior consultant at a subsidiary of

Metropolitan Life Insurance Company, then testified that at the time policy no. 6939500 had been transferred to Foresta's wife in January, 1994, the policy remained in force and had a cash surrender value of approximately $2,300 and a dividend due of $2,846.65. She further testified that a premium of $15,775 was due and unpaid.

In accordance with this testimony, the jury returned a verdict of $723,906 for Caliber on the claims under the marketing agreement, and a separate verdict of $15,775 for Foresta on the claim under the insurance agreement. The trial judge then held a further evidentiary hearing with respect to whether Clamp-All's violation of G. L. c. 93A in connection with its termination of the marketing agreement was wilful. The judge found that the violation was not wilful because Clamp-All had actually believed that it had a proper basis for terminating the marketing support agreement even if it had done so in order to obtain a reduction in the commissions it was required to pay Caliber under the agreement.

The judge thereafter caused a judgment to be entered for Caliber in the amount of $723,906, plus interest measured from December 17, 1993, the date Clamp-All had filed its complaint, until the date of the judgment. The judge also awarded Caliber $150,000 in attorney's fees and $15,033.90 in costs incurred in prosecuting the claim brought under G. L. c. 93A. The judge also caused a separate judgment to be entered for Foresta in the amount of $15,775, plus interest measured from December 17, 1993, until the date of judgment.

1. *Entry and retention of default judgment.* The entry or removal of a default judgment of the type involved in this case "has to do with the management of the case and, as such, is committed to the sound discretion of the [lower court] judge." *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 429 (1986). We will not consider that discretion abused "unless its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice." *Ibid.*

We can perceive no such abuse of discretion in this case either in the entry of the September 17, 1996, default judgment or in the subsequent refusals by the same judge to vacate this

judgment. Clamp-All's failure to comply with the rules of discovery or the court's discovery orders was not isolated or temporary. Rather, it was persistent and flagrant and continued even after a prior default had been removed. Moreover, Clamp-All was not an unsophisticated litigant. Its president, Palmer, who was actively involved in the litigation and was aware of Foresta's discovery requests from the time they were served, had been a member of the Massachusetts bar since 1959 and had practiced as a lawyer for many years. In such circumstances, Clamp-All could properly be held responsible for its conduct of the litigation and its repeated failure to comply with the rules of discovery and the court's discovery orders. See *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 161 (1987); *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, *supra* at 429-430.

Clamp-All nevertheless claims that the second judge abused his discretion in entering the default judgment at the September 17, 1996, hearing because he failed to ascertain, among other facts, that Clamp-All had complied with at least part of the first judge's June 25, 1996, discovery order by making documents available at its offices on July 8, 1996. Clamp-All, however, was not required to comply with only part of the June 25 discovery order. Rather, it was required to comply with the entire order within the time prescribed by the order. Clamp-All, moreover, failed even to oppose Foresta's motion for a default judgment or appear at the September 17 hearing. In light of this failure, the judge plainly did not abuse his discretion in not ascertaining facts that Clamp-All had failed to bring to his attention. Also, in light of Clamp-All's repeated failures to comply with the court's discovery orders, he did not abuse his discretion in entering the default judgment.

Clamp-All further claims that, in any event, the second judge abused his discretion in failing to allow its motion to vacate the default judgment which it filed on December 20, 1996. It is settled, however, that, in order to obtain such relief pursuant to rule 55(c) or 60(b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 823, 828 (1974), a party must show both a good reason to remove the default and also the existence of meritorious claims or defenses. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 430-431 (1979). See also

*Lye* v. *Lye*, 322 Mass. 155, 157-158 (1947); 10A Wright, Miller, & Kane, Federal Practice & Procedure § 2697 (3d ed. 1998).

In the present case, as we have previously noted, Clamp-All was a sophisticated litigant and, hence, the second judge was not required to accept its proffered negligence-of-counsel excuse for its repeated failures to comply with the applicable discovery rules and the court's discovery orders. Moreover, Clamp-All did not even purport to make a showing of meritorious defenses at the time it submitted its motion to vacate the default judgment. Rather, it merely asserted that it had such meritorious defenses and did not even attempt to make a showing, through affidavits or otherwise, that this was so.

In light of these circumstances, the judge did not abuse his discretion in denying Clamp-All's motion to vacate the default judgment. See *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 222 (1998). He also did not abuse his discretion in denying Clamp-All's subsequent motion for reconsideration. While, at that time, Clamp-All filed a supplemental affidavit of Palmer purporting to show meritorious defenses to Foresta's counterclaims, it failed to offer any substantial reason why it had not done so earlier, at the time it filed its original motion, as required by Rule 9A(a)(1) of the Rules of the Superior Court (2001).[4]

Thus, the most that Clamp-All asserted to excuse its failure to file the supplemental affidavit earlier is that it had needed time to retrieve documents from its former counsel to "prove that its claim and the defenses to [Foresta's] counterclaims have merit," and it was anticipating that the judge would hold a hearing on its motion to vacate the default judgment. There is no apparent reason, however, and Clamp-All has suggested none, why it needed documents from its former counsel to outline the basic facts purportedly supporting its defenses. Even if Clamp-All did need such documents, it should at least have alerted the judge to its problem at the time it filed its original motion, rather than simply file the motion and then remain silent for more than ten weeks while Foresta was filing his opposition and the judge was ruling on its motion.

---

[4]Rule 9A(a)(1) provides that "[a]ffidavits and other documents setting forth or evidencing facts on which the motion its based shall be served with the motion."

There is also no apparent reason why Clamp-All should simply have assumed that the judge would grant a hearing on its motion. No such hearing was required, see Superior Court Rule 9A(c); *F.W. Webb Co.* v. *Averett*, 422 Mass. 625, 627-628 (1996), and, even by its own account, Clamp-All did not receive any notice of hearing until February, 1997, shortly before the judge actually ruled on its motion.

Clamp-All, therefore, failed to offer any reasonable excuse for its failure to submit the materials included with its motion for reconsideration earlier. In such circumstances, the judge was not required even to consider the motion for reconsideration, let alone to allow it. See *Phoenix Home Life Mut. Ins. Co.* v. *Brown*, 49 Mass. App. Ct. 657, 661 (2000) ("there is no duty to reconsider an issue or a question of fact or law, once decided"). Otherwise, a party could submit nothing at all in support of a motion and then, when the motion is properly denied, endlessly move for reconsideration based on materials that were readily available to it at the time it submitted the motion.[5]

Clamp-All finally contends that the judge abused his discretion in failing to grant its second motion for relief from judgment which it filed in December, 1997, and purported to base on "newly discovered evidence." In fact, such "newly discovered evidence" consisted largely of extraneous matters, such as events occurring since the judge had entered his prior orders, or matters that Clamp-All easily could have brought to the judge's attention at the time of such orders, such as the fact that Caliber, rather than Foresta, had signed the marketing agreement. The judge therefore did not abuse his discretion in denying Clamp-All's second motion to vacate the default judgment.

---

[5]We note that, even if the judge had been required to consider Palmer's supplemental affidavit prior to ruling on Clamp-All's motion for reconsideration, the affidavit made no sufficient showing of meritorious defenses to require allowance of the motion. Thus, while Palmer asserted in the affidavit that Clamp-All had conducted an "investigation" into Foresta's activities prior to terminating the marketing support agreement, he did not say what that investigation was or how it had determined what it had purportedly determined. The affidavit therefore consisted largely of conclusory assertions rather than facts showing that Clamp-All had substantial cause for terminating the agreement even though the Forestas' personal guarantees remained in effect and Clamp-All was meeting the sales goals specified in the agreement.

In summary, we conclude that there was no abuse of discretion either in the judge's initial entry of the default judgment against Clamp-All or in his denial of Clamp-All's subsequent motions to vacate the default judgment.

2. *Alleged trial errors.* Clamp-All contends that the trial judge committed several errors in conducting the damages trial, including (1) allowing Foresta at the outset of the trial to substitute Caliber as the party plaintiff on his counterclaims regarding the marketing agreement, and thereby obtain the benefit of the default judgment; (2) instructing the jury that the only issue before them was the issue of damages; (3) excluding evidence that Caliber had failed to comply with the marketing agreement after it had been terminated and had thereby improperly failed to mitigate its damages; (4) admitting evidence as to Clamp-All's estimated rather than actual sales results for 1997 and the first five months of 1998; and (5) instructing the jury that they could award Caliber damages for its lost commissions without deducting from such damages the sales or profits that Caliber had achieved during the damages period.

We reject each of these claims (with one exception which we discuss below) for substantially the reasons stated by the trial judge. The judge did not err in allowing Foresta to substitute Caliber as the plaintiff on the counterclaims regarding the marketing support agreement. From the outset of the litigation, it was always clear that the counterclaims were intended to be brought to recover all the commissions that Caliber would have earned if the marketing support agreement had not been wrongfully terminated while the personal guarantees given by Foresta and his wife were still outstanding. Clamp-All therefore could not have been surprised by the substitution of Caliber for Foresta as the plaintiff on the counterclaims pertaining to the marketing agreement, or prejudiced in any way. In the circumstances, the substitution was designed merely to correct a technical mistake in naming the party entitled to the commissions and, hence, was authorized by Mass.R.Civ.P. 21, 365 Mass. 767 (1974), at any time during the proceedings, even after the damages trial had been concluded. See *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 557 (1988) ("We look to see whether an amendment would enable a plaintiff to maintain the action which he originally

intended to bring"). See also *Pearson* v. *Bara*, 263 Mass. 502, 503-504 (1928) (amendment was proper, in suit for injuries to automobile, to substitute original plaintiff's wife as plaintiff, after it appeared at trial that automobile was registered in her name). "A party to an action has no vested right to have a case decided and determined upon a form of procedure which may have been inadvisedly or mistakenly chosen." *Pizer* v. *Hunt*, 250 Mass. 498, 504 (1925).

The judge likewise did not err in instructing the jury that the only issue before them was the question of damages. Except insofar as it asserted that the counterclaims pertaining to the marketing support agreement were defective because Caliber, rather than Foresta, was entitled to commissions under the agreement, Clamp-All did not even contend before the trial judge, much less show, that the facts pleaded in the counterclaims failed to state claims of the type alleged. In these circumstances, the necessary effect of the default judgment was to leave open only the question of damages on such counterclaims. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 832-835 (1978). See also 10A Wright, Miller, & Kane, Federal Practice & Procedure § 2688, at 63 (3d ed. 1998) ("once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief").

The judge was not required to permit Clamp-All to introduce evidence that Caliber had failed to comply with the terms of the marketing agreement after Clamp-All had terminated the agreement. Clamp-All's termination of the agreement relieved Caliber of any further obligation to comply with the agreement. See *Ward* v. *American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-101 (1983) ("It is well established that a material breach by one party excuses the other party from further performance under the contract"). On the other hand, the judge properly permitted Caliber to estimate Clamp-All's sales for 1997 and the first part of 1998, for purposes of determining the commissions owed, since no actual sales figures were available and the estimates were reasonably based on actual sales figures for prior years. See *Stuart* v. *Brookline*, 412 Mass. 251, 256-257 (1992) ("The fact that there may be an element of uncertainty as to the amount of damages does not bar their recovery").

The judge also did not err in failing to instruct the jury that they must deduct from Caliber's recovery amounts that Caliber or Foresta had earned or could have earned from sources other than Clamp-All during the damages period. Clamp-All presented no evidence at all that Caliber or Foresta had in fact received any such amounts, or that they had unreasonably failed to mitigate their damages. See, e.g., *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 677 (1964) (defendant bears burden of proof on issue of mitigation of damages). The judge, therefore, was not required to instruct the jury on any such matter. See *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 483-484 (1993).

On the other hand, Clamp-All did present evidence, which Foresta did not deny, that it had made ten $1,000 payments to Foresta during the period from January through March, 1993, pursuant to the noncompetition provisions of the marketing agreement. We can discern no reason why the judge should not have instructed the jury to deduct this amount from Caliber's damages award. Indeed, the judge did instruct the jury that they should deduct any amounts that Clamp-All had paid to Caliber (rather than Foresta) during the damages period. Since Caliber and Foresta were essentially alter egos, we think that the judge should have instructed the jury to deduct any amounts that Clamp-All had paid to Foresta as well. We will therefore amend the judgment awarding damages to Caliber to provide for such a deduction.

To the extent that Clamp-All has sought to raise other contentions with respect to the judge's conduct of the damages trial, those contentions have not been argued within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), or are without merit.

3. *Denial of motions for directed verdict and for judgment notwithstanding the verdict.* Clamp-All additionally contends that the trial judge committed error in (1) refusing to enter a "nonsuit" against Foresta and Caliber for failing to comply with a trial subpoena and Clamp-All's prior discovery requests, (2) denying Clamp-All's motion for directed verdict on the counterclaim pertaining to the insurance agreement made on the grounds that there was no consideration for the agreement or

evidence that Clamp-All had failed to pay a premium due on the policy, and (3) refusing to grant Clamp-All's motion for judgment notwithstanding the verdict based on alleged fraud by Foresta's counsel in obtaining the default judgment.

Once again, we reject each of these claims for substantially the reasons stated by the trial judge. The judge did not err in denying Clamp-All's motion for a nonsuit against Caliber and Foresta for failure to comply with a trial subpoena and Clamp-All's prior discovery requests. The judge found that Foresta had made a reasonable effort to comply with Clamp-All's trial subpoena, which was served on him only on the first day of the damages trial, and that Clamp-All had not been prejudiced by any nonresponse. Moreover, Clamp-All's discovery requests had not been made within the deadline established by the tracking order entered in the case, and, in any event, Clamp-All had failed to obtain any order from the court compelling compliance with such requests.

The judge also did not err in denying Clamp-All's claim for a directed verdict on the claim under the insurance agreement. Clamp-All was precluded by the default judgment from further litigating the affirmative defense of lack of consideration, and there was evidence that, at the time the insurance policy subject to the agreement was transferred to Foresta's wife, a premium of $15,775 was due and unpaid.

Finally, the judge did not err in denying Clamp-All's motion for judgment notwithstanding the verdict. Clamp-All made no showing that Foresta's attorney had committed any fraud in obtaining the default judgment.

4. *Award of attorney's fees and costs pursuant to G. L. c. 93A, § 11.* In addition to liability for breach of contract, the default judgment also established Clamp-All's liability for violation of G. L. c. 93A, § 2, since it established that Clamp-All had terminated the marketing agreement to compel Foresta to accept lower commissions. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991), quoting from *Wang Laboratories, Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 857 (1986) ("conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes").

Moreover, the judge explicitly adopted the jury's award on the breach of contract claim as Caliber's damages on its c. 93A claim. Caliber therefore recovered damages on its c. 93A claim and, hence, was entitled to an accompanying award of attorney's fees and costs, including expert witness fees. See G. L. c. 93A, § 11; *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989) (attorney's fees and costs properly awarded under G. L. c. 93A, § 11, where the defendant's conduct caused the plaintiff to suffer a loss of money recoverable under the statute).

In determining the amount of the award, the judge made detailed findings following the guidelines established by the Supreme Judicial Court in *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978), and *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). Clamp-All nevertheless contends that the judge abused his discretion in determining the amount of the award because he failed to exclude from the award (1) time spent before the c. 93A claim was added to the case, (2) time spent in prosecuting the claim regarding the insurance agreement, (3) time spent in pursuing the unsuccessful claim for multiple damages under G. L. c. 93A, § 11, and (4) time spent in connection with Clamp-All's bankruptcy proceedings.

It is well settled, however, that "where a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary." *Hanover Ins. Co.* v. *Sutton*, 46 Mass. App. Ct. 153, 177 (1999), quoting from *Industrial Gen. Corp.* v. *Sequoia Pac. Sys. Corp.*, 849 F. Supp. 820, 826 (D. Mass. 1994). See *Arthur D. Little Intl., Inc.* v. *Dooyang Corp.*, 995 F. Supp. 217, 224 (D. Mass. 1998), and cases cited. In the present case, the trial judge specifically found that it was "difficult to sort out what work bore on the [c.] 93A issues and what did not." He accordingly considered several factors other than the amount of time specifically devoted to the c. 93A issues in determining the amount of the award, including the novelty and difficulty of the questions involved, the importance of the matter to Caliber and its principal, Foresta, and the results achieved. It has not been made to appear that the judge abused his considerable discretion in taking this approach in the circumstances of this case, or

in determining the amount of his award. We therefore will not disturb the award.

5. *Calculation of prejudgment interest.* We agree with Clamp-All that prejudgment interest on the damages awarded to Caliber should have been calculated, not from the date Clamp-All filed its complaint, but from the date each commission payment was due. See G. L. c. 231, § 6C. See·also *O'Malley* v. *O'Malley,* 419 Mass. 377, 381 (1995); *Hawes Office Sys., Inc.* v. *Wang Labs. Inc.,* 580 F. Supp. 812, 822 (E.D.N.Y. 1984). We therefore will direct that prejudgment interest should be recalculated in this manner.[6]

6. *Conclusion.* The judgment awarding Caliber $723,906 in damages on its claims pertaining to the marketing agreement is vacated. A new judgment shall be entered deducting $10,000 from the amount of such award and calculating prejudgment interest thereon from the dates that the commissions owed to Caliber became due and payable. The attorney's fees award and the judgment awarding Foresta $15,775 on the claim pertaining to the insurance agreement are affirmed.

*So ordered.*

---

[6]While Clamp-All additionally claims that a "small error" was made in the calculation of prejudgment interest on the separate damages awarded to Foresta, it has made no showing that this is so. We will therefore not disturb this calculation.