Billings, Thomas P., J.
The plaintiff (“Kherlop”), a designer-builder, prepared plans and undertook the construction (through subcontractors) of an addition to the defendants’ (the “Domoses’ ”) Belmont home. Concerned about what they were seeing, the Domoses terminated Kherlop on August 1, 2007, and ordered him and his subcontractors off the site. He brought this action, seeking damages for breach of contract. The Domoses counterclaimed, asserting counts for breach of contract, negligence, and violation of Chapter 93A, among others.
The case was tried to a juiy in my session on November 15-23,2010. With the parties’ concurrence, I submitted the Chapter 93A claim to the jury, reserving to myself only the question of whether, should the jury And a willful or knowing violation, the damages would be doubled, trebled, or something in between.
In response to special questions, the jury found that Kherlop had, before August 1, 2007, materially breached the contract, such that the Domoses were justified in terminating the contract on that date; this spelled the end of his contract claim. On the counterclaims, the jury found Kherlop liable for breach of contract, with damages of $172,350; in negligence, with damages of $202,308; and for violations of Chapter 93A, with damages of $15,000. On the 93A claim, the juiy determined that Kherlop had not “lowballed” the contract, but that his work had materially deviated from the plans and/or specifications and also violated the building laws of the Commonwealth (see G.L.c. 142A,§17),and that the violations were willful and/or knowing. Finally, the juiy specified that the total compensatoiy damages on all claims, without duplication, were $217,308.
At a further hearing on December 8, 2010, counsel were heard on four remaining issues;
1. Multiple damages: What amount of damages is to be multiplied, and whether multiplier should be 200% or 300%.
2. Attorneys Fees: The amount of reasonable attorneys fees to which the Domoses are entitled on account of the disposition of their claim under Chapter 93A. (On this issue, the fee affidavit of the Domoses’ counsel was filed and served just prior to the hearing, and lacked itemized billing statements. I provided additional time for counsel to provide the itemized statements, and for Kherlop’s counsel to respond. I have since received and reviewed these additional submissions.
3. Expert Fees: James Jozokos, an architect retained by the Domoses for the design work needed to perform corrective work and finish the project, was designated by the Domoses as both a fact and an expert witness, and was subpoenaed by Kherlop as a fact witness. Kherlop, the plaintiff, called Jozokos as part of his case; the Domoses’ counsel deferred cross examination at that time, but recalled Jozokos as part of their case, and elicited both fact and opinion testimony at that time, on which Kherlop’s counsel cross-examined. Jozokos spent some time in the courtroom waiting for Kherlop’s counsel to call him, for which he has billed the Domoses at his customaiy hourly rate, totaling $1,350, which the Domoses contend Kherlop should pay.
4. Interest Accrual Date: The Domoses seek to have the interest on so much of the damage award as represents the recoveiy on their contract claim figured from August 1, 2007, the date of breach.
I have since received further submissions on the Domoses’ claim for attorneys fees and costs.
The following are my rulings on these four issues, and the reasons therefor.
I. Multiple Damages.
To the juiy’s damage award of $217,308 will be added the sum of $30,000. This represents a trebling of the $15,000 award on the Chapter 93A claim.
The Domoses have urged that whatever multiplier is applied should pertain to the entire $217,308 awarded by the jury on all claims. They point to the following language in c. 93A, §9:
For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.
This sentence was added to the statute by St. 1989, c. 580, §1. As is usual in Massachusetts,[1] the official legislative history behind the amendment is uninformative as to legislative intent. According to the unofficial account of the amendment’s proponent, however, its purpose was to legislatively overrule a line of cases that had limited multiple damages, in cases charging an insurance company with bad faith in refusing to settle an claim on which liability was reasonably clear, to damages representing loss of use of the money (i.e., *256 lost interest).[2] Hailey, New Incentive for Insurers to Settle Claims Reasonably and Promptly, 34 BostonBarJ. 16, 18 (Sept./Oct. 1990).
Such intent is not, at least to this reader, obvious from the legislative language. Later cases interpreting the amendment—some citing Mr. Haley’s article— have, however, accepted that this earlier caselaw (see fn. 2) was “the ‘mischief the amendment was manifestly intended to correct.” See, e.g., Yeagle v. Aetna Cas. & Sur. Co., 42 Mass.App.Ct. 650, 653-54 & nn.3 & 4 (1997); Cohen v. Liberty Mut. Ins. Co., 41 Mass.App.Ct. 748, 754 (1996).
I am unaware of any cases interpreting the operative sentence outside the insurance bad faith context. It is one thing to rely on informed commentaiy for the proposition that the amendment was meant to remedy a particular “mischief,” even if the language does not clearly say so. It is another to ignore the statute’s language, which is considerably broader. I do not read the 1989 amendment as necessarily restricted to insurance bad faith cases (although this is a natural application of it; see below). The issue before me, then, is whether, on the evidence received at trial and with proper respect for the jury’s probable intent, the entirety of the Domos project should be considered a single “transaction or occurrence” for multiplication purposes, or whether the Court should confine its multiplication to the damages resulting from conduct that the jury found violated Chapter 93A.
The Chapter 93A claim was presented under three theories: (1) that Kherlop “lowballed” the contract price in the hope of recouping additional profit in “extras” for work that should have been anticipated and included in the original price,[3] (2) that he “deviat[ed] from or disregard(ed) plans or specifications in [a] material respect without the consent of the owner,” and (3) that he “violat[ed] . . . the building laws of the commonwealth.”[4]
In instructing the jury, I forewent (with both counsel’s agreement) any extended and general exposition of what constitutes “unfair or deceptive” conduct, and focused on these three discrete issues. The jury found for the Domoses on the second and third theories and awarded $15,000 in damages, which they then specified was separate and apart from any damage resulting from breach of contract or negligence (the former being more than subsumed in the latter).[5] This finding, and respect for the jury’s apparent intent ais a vis what was to be multiplied,[6] argue for treating the statutory violations separately from the common-law claims.
Moreover, while the 1989 amendment may not expressly mention insurance bad faith claims, there is logic to its application in such cases that does not commend itself here. The insurer which has declined payment of a claim on which liability and coverage are reasonably clear has damaged the policyholder or claimant to the full extent of the payment(s) it ought to have made. The fact that all is eventually made right with a judgment for breach of the insurance policy does not differentiate these cases from any other Chapter 93A claim on which the plaintiff prevails. Nor, the Legislature determined in 1989, are Chapter 93A’s deterrent and punitive purposes adequately served by merely multiplying the interest award. Multiplying the entire breach-of-contract award in such a case simply puts claimants on insurance policies on the same footing as any other plaintiff who has suffered a loss of money or property by a businessperson’s unfair or deceptive conduct. In any such case, the full amount of the loss is to be multiplied if the violation was willful or knowing.
In this case, by contrast, the juiy found that Kherlop’s conduct violated Chapter 93A only in limited respects, and resulted in only $15,000 of actual damages. The remaining damages, the jury found, resulted from conduct that, while culpable, did not violate Chapter 93A on any of the three theories presented. This amounts to a finding that Kherlop’s deviations from plans, specifications, and the Building Code were separate occurrences from the rest.
I will therefore apply the multiplier only to the $15,000 award on the Chapter 93A claim. That said, I believe that treble damages are appropriate here. The evidence pertaining to plan deviations and Code violations was clear, convincing, and of an aggravated character.
The starkest example had to do with the roof and floor structures for the family room, which was designed as a clear space without supporting columns. It was so constructed. One day, Mr. Domos overheard Mr. Kherlop’s consulting structural engineer say, of the roof system’s design, “That won’t work.” The engineer worked out a new design of sorts, though before it could be constructed the Domoses, their confidence shaken by this and numerous other aspects of the project, fired Kherlop. The Domoses’ expert testified credibly that as Kherlop had built it the roof failed Code, and would not have survived the next significant wind-or snowstorm. Mr. Kherlop’s expert conceded that the plans did not show the necessary detail for a structurally sound, Code-compliant roof.
The family room floor was likewise under-supported according to the requirements of the Building Code (it bounced when one walked on it), requiring the addition of a column in the basement not included in the original plans. The jury was not asked to specify the factual basis for its findings, but it seems likely that these aspects played a role (as may the installation of a half-moon window without a header—another plain violation of the Code). A trebling of the jury’s conservative compensatory award seems entirely appropriate here.
II. Attorneys Fees.
The finding for the Domoses on their Chapter 93A claim entitles them to an award of the “reasonable *257 attorneys fees and costs incurred in connection with [this] action.” G.L.c. 93A, §9. Their counsel has submitted her affidavit, with copies of bills detailing the firm’s charges. These show that the total fees charged the Domoses between August 16, 2007 and December 13, 2010[7] were $103,272.50, plus expenses of $2,582.83.[8] The fees represent about 425 hours of professional work. Nearly all was by Atty. Julie Brady, who tried the case and billed at $250/hour; a much smaller amount is for work of Atty. Joseph Noone, at $275/hour; and junior attorneys and paralegals (at $175 and $75 respectively) account for about 34 hours. Slightly over half of the work and resulting charges (238.75 hours/$56,857.50) are on a single for the period August-December 2010, the period of trial preparation, trial, and post-trial motions.
In determining a reasonable fee award, the Court is to
consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.
Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979).
A, B, C. The Nature of the Case and the Issues Presented; The Time and Labor Required; The Amount of Damages Involved.
Residential construction cases are characterized by a level of detail, of factual and technical complexity, and of necessary reliance on expert consultants and witnesses, that is often out of proportion to the financial stakes involved. Simply put, these cases are often highly uneconomical to litigate and try, no matter who the lawyer. The amount of the attorneys’ bill, while sizeable, is unsurprising in a case with this subject matter if litigated with care.
The case had been pending for 38 months by the time of trial. I did not, of course, witness the parties’ pretrial preparations. It was evident at trial that the parties and the other major participants in the project had been deposed, and the paper discoveiy (insofar as I glimpsed it) appeared to be about what one would expect for a case of this nature.
The trial began with impanelment on November 15, 2010.[9] Evidence was presented over days two through seven, and the jury returned its verdict on the eighth day.
The stakes, for a middle-class family, were high: Mr. Kherlop initiated the proceedings with a complaint seeking just over $102,000 in damages, while the Domoses incurred single damages that the jury ultimately assessed, on all claims, at $217,308 (to which will be added about 40% in interest). There was, in short, about $320,000 reasonably at issue, excluding interest. The legal work and fees in this case overall were proportional to the nature of the case and to the financial stakes.
D. The Result Obtained.
The juiy’s verdict as a whole was, in my estimation, an excellent result for the Domoses. The original contract price was $180,000, augmented by an additional $ 18,170 per Change Order # 1. My notes indicate that in addition to $40,000 they paid Mr. Kherlop, the Domoses paid Hancock Builders an additional $212,370 to fix and complete what Kherlop left behind. There were additional fees for an architect and a structural engineer. Finally, the necessary redesign work resulted in several changes that were detrimental, at least aesthetically, to the project as originally conceived, and substantial parts of the work within Kherlop’s contract remains to be done (the Domoses having run out of funds). The juiy’s verdict appears to have compensated the Domoses in full for their benefit-of-the bargain damages, their consequential damages, and the hard-to-quantify damages pertaining to the altered design and uncompleted work.
There remains the issue of whether the fees claimed—which were reasonable in relation to the case and the verdict as a whole—ought to be adjusted for the fact that the Chapter 93A award accounted for only $15,000 (when trebled, $45,000) of the whole.
“It is well settled . . . that ‘where a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary.’ ” Clamp-All Corp. v. Foresta, 53 Mass.App.Ct. 795, 813 (2002). This is such a case. The Domoses’ defense of Kherlop’s contract claim, and their pursuit of their own contract, negligence, and Chapter 93A counterclaims, arose from the same common nucleus of operative facts. The Chapter 93A claim and the legal work devoted to it were not, as a practical matter, segregable from the whole.
The Domoses have recovered only $45,000 on the Chapter 93A claim—the only claim that carries a right to recover attorneys fees. The seeming dis-proportionality of the fee to the award (who would spend $103,000 to get $45,000?) must, however, be viewed in its context.
[R]ealistic assessment of the benefits the litigation actually produced is always necessary when attempting to determine what litigation costs are appropriate, for neither costs nor benefits are free-floating variables. In determining time reasonably spent on a matter, the court must be mindful of “the difficulty of the case” and “the results obtained,” and “compensable hours may be reduced if the time spent was wholly disproportionate to the interests at stake.”
Killeen v. Westban Hotel Venture, LP, 69 Mass.App.Ct. 784, 792 (2007) (citations omitted).
*258 The proportionality issue concerns the reasonableness of counsel’s conduct. Here, that conduct was reasonable, even viewed (as appropriate for the case) purely from the standpoint of economics.[10] As noted above, this was a $320,000 dispute overall, as measured by the spread between what Kherlop claimed and what the jury awarded the Domoses. Moreover, the evidence would (in my judgment) have supported a finding that considerably more of the Domoses’ harm was caused by building code violations and/or deviations from plans and specifications than the $15,000 verdict on the c. 93A count reflected.[11]
Where counsel has reasonably valued the case as having greater potential than the result actually achieved, it is reasonable for her “to have expended effort in the litigation commensurate with that potential.” Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 431 (2005) (upholding fee award of $1 million on ajudgment of $118,950 ($39,650 trebled), where counsel reasonably pressed forbenefit-of-the-bar-gain damages but was awarded only reliance damages). Here, unlike the Twin Fires case, counsel actually achieved the result she sought (or close to it), albeit mostly on the common-law, not the c. 93A, claims. Where (as I find, below) the claimed fee is reasonable as to rate, hours, and the Unthicum lodestar factors and is proportional to the result achieved overall, no deduction is appropriate on account of its mathematical relation to the Chapter 93A award specifically.
E.The Experience, Reputation and Ability of the Attorney.
I did not know Atty. Brady before this trial, and I am unaware of her wider reputation. She prepared and tried an excellent case in eveiy respect, however.
F.The Usual Price Charged for Similar Services by Other Attorneys in the Same Area.
The hourly rates of all the professionals who billed on this case are highly competitive in the Boston-area legal market. Ms. Brady and her firm delivered high-caliber service, at suburban rates.
G.The Amount of Awards in Similar Cases.
No such awards have been brought to my attention.
****
Starting from the hours expended and the rates charged—both of which were reasonable—and applying the Unthicum factors, I find that the fees and expenses charged to the Domoses were reasonable for this litigation. I award them in full, in the amount of $105,855.33.
III. Jojokos’s Expert Fees.
“(R]easonable expert witness fees should normally be recoverable in a c. 93A case in order to vindicate the policies of the act.” Linthicum v. Archambault, 379 Mass. at 389. This makes it unnecessary to consider, as a separate ground, the Domoses’ argument that because Kherlop’s attorney subpoenaed their expert (Mr. Jozokas) and then made him sit in the courtroom for several days, he, not they, should pay the resulting bill. If the services were reasonably necessary, they are to be awarded.[12]
The Domoses’ counsel has represented by affidavit that the firm of Paul L. Davies & Associates Architects, Inc. has billed them $10,070.00 for expert witness fees, principally or entirely for Mr. Jozokas’s work at $90.00 per hour. Expert witness fees, like attorneys fees, must be reasonable if they are to be shifted to the other party. Other than observing Mr. Jozokas’s trial testimony, I do not presently have any evidentiary basis for assessing the reasonableness of his firm’s fee.
It is the claimant’s “obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work.” Twin Fires Investment, 445 Mass. at 428 (discussing attorneys fees). At a minimum, this means an itemized statement of the time charges involved, and the services they represent.
I will take no action on this aspect of the case for now. If the Domoses wish to pursue the issue, they may do so by means of a timely motion to alter or amend the judgment under Mass.R.Civ.P. 59(e).
IV. Interest Accrual Date.
The jury determined that Kherlop had materially breached the contract on or before August 1, 2007.
Under G.L.c. 231, §6C, prejudgment interest is to be calculated from the date of the breach or demand, if established. If the date of breach or demand is not established, prejudgment interest is to be calculated from the date of commencement of the action. Establishing the date of breach or demand is a determination for the trier of fact, and, where trial has proceeded before a jury, neither the judge nor an appellate court can make such a determination.
Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 125 (1986). Interest on the contract award of $172,350 will therefore be computed from August 1, 2007.
Interest on the difference between the contract award and the total jury award, or $44,958, will run from the date of filing.
There is no right to prejudgment interest on the $30,000.00 in multiple damages or the $103,272.50 in attorneys fees, but interest will run from the date of filing on the award of $2,582.83 in out-of-pocket costs. Osborne v. Biotti, 404 Mass. 112, 116 (1989).
ORDER FOR JUDGMENT
For the foregoing reasons, judgment shall enter for the plaintiffs-in-counterclaim Robert Domos and Candace Domos in the amount of $353,163.33, as follows:
Judgment on jury’s verdict $217,308.00
Addition for treble damages 30,000.00
Attorneys fees 103,272.50
Costs 2.582.83
TOTAL $353,163.33
*259 Interest thereon shall run: (a) on the sum of $172,350.00 (the contract award), from August 1, 2007 (the date of breach): (b) on the sum of $47,540.83 (other single damages plus costs), from September 5, 2008 (the date of filing); and (c) on the remaining sum of $133,272.50 (attorneys fees plus punitive damages), from the date judgment enters.

And as may be just as well. See Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 395 (1951) (Jackson, J. concurring); Danner, “Justice Jackson’s Lament: Historical and Comparative Perspectives on the Availability of Legislative History,” 13 Duke J. of Comp. & Intl. Law 151 (2003).

See, as representative of this line of cases, Wallace v. American Mfrs. Mut. Ins. Co., 22 Mass.App.Ct. 938, 939-40 (1986); Trempe v. Aetna Cas. & Sur. Co., 20 Mass.App.Ct. 448, 457 (1985); and Shapiro v. Public Serv. Mut. Ins. Co., 19 Mass.App.Ct. 648, 657 (1985); and the discussion in Yeagle v. Aetna Cas. & Sur. Co., 42 Mass.App.Ct. 650, 654 (1997).

See Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 814 & n.2, 825 (1982).

By its affirmative findings on these latter two theories, the jury found that Kherlop had violated the Home Improvement Contractors Act, G.L.c. 142A, §§17(2), 17(10). By definition, a violation of Chapter 142A is a violation of Chapter 93A. G.L.c. 142A, §17, last sentence.

I am here reading only slightly between the lines of the jury’s answers. The damage awards (negligence ($172,350) contract ($202,308); contract + 93A ($15,000) = total damages ($217,308)) would be a mighty coincidence otherwise.

My jury instructions included an explanation that whatever (if anything) the jury awarded on the Chapter 93A claim would be multiplied twice or thrice, as I determined, if they found the violation to be willful or knowing. Neither side objected to this instruction.

The services began with a consultation “regarding problem with contractor,” three weeks before Kherlop filed suit, and continued through post-trial motions.

Additionally, the Domoses’ architect, James Jozokos, has apparently billed them directly for $10,070.00 (at $90.00 per hour) in expert witness fees incurred for his preparation, trial attendance and testimony. This amount is addressed below, in subpart III.

This was the third trial date for this case. The original date of 7/28/10 was continued for reasons that do not appear; the next date of 9/27/10 was continued because the Court could not reach the case.

The case did not present great constitutional or public-law questions, see Stratos v. Department of Public Welfare, 387 Mass. 312, 323 (1982); nor is it likely to confer benefits on a broader class of persons than the Domoses themselves. See Killeen, 69 Mass.App.Ct. at 793.

The evidence did not permit a determination of how much of the charges of the replacement contractor, architect, and structural engineer were occasioned by the Code-non-compliant design and construction of the family room roof and floor systems. It was nonetheless evident that these two issues were a substantial focus of their efforts.

The expert in question, Mr. Jozokas, was also a percipient witness, having come onto the job just as Mr. Kherlop was leaving it to do the design work needed to correct and complete the work.